No. 23,762.

CHARLOTTE T. JAMES, *Appellee,* v. MARTHA H. YOUNG, as Executrix of the Estate of C. W. James, Deceased, MARTHA H. YOUNG and TOM J. LONG, *Appellants.*

SYLLABUS BY THE COURT.

1. JURISDICTION OF DISTRICT COURT—*Action to Set Aside Probate Court Proceedings—To Cancel Fraudulent Deed by Executrix—Not a Collateral Attack.* An independent action is maintainable to set aside probate court proceedings for the sale of real estate and to cancel an executrix's deed conveying the property pursuant thereto when it is shown that the probate proceedings were fraudulently undertaken by the executrix for the purpose of depriving the plaintiff of her interest in and title to the property, that the land was sold and conveyed at private sale to a grantee in collusion with the executrix, that the sale was made at a grossly inadequate price, and that the executrix and grantee had a private understanding that the land was to be held by the grantee for the benefit of the executrix or for the benefit of the grantee and executrix jointly.

2. SAME—*An Independent Action Stated—Not a Collateral Attack.* An independent action in a court of general jurisdiction which seeks to set aside the orders and judgments of a probate court in proceedings fraudulently undertaken and consummated therein by an unfaithful executrix, and to cancel and set aside the executrix's deed to a grantee with whom she was in collusion, is a direct and not a collateral attack upon the proceedings, orders and judgments of the probate court.

3. SAME. Where all the relief to which a defrauded party is entitled cannot be granted by reopening the judgment and proceedings in a court of limited jurisdiction, redress may be sought in an independent action in a court of general jurisdiction; nor is it necessary that the defrauded party seek such relief as the court of limited jurisdiction can give, and seek only the remainder of the relief to which she is entitled in a court of general jurisdiction.

4. FRAUD OF EXECUTRIX—*Evidence—Findings of Fact.* Evidence examined and *held* sufficient to sustain the trial court's finding on an issue of fact.

Appeal from Jefferson district court; MARTIN A. BENDER, judge. Opinion filed May 6, 1922. Affirmed.

*H. N. Casebier,* of Oskaloosa, for the appellants.

*Oscar Raines,* of Topeka, and *H. T. Phinney,* of Oskaloosa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by a mother against her daughter for miscellaneous relief on account of fraud.

The plaintiff, a woman of eighty years, and the defendant, her daughter, were the heirs and devisees of the late C. W. James, of Independence, Mo.  James was the owner of 292.53 acres of land in Jefferson county, Kansas, which descended in equal shares to mother and daughter.  The defendant was appointed executrix of his estate.  The plaintiff by a former husband has several sons who, in the usual course of nature, would inherit a considerable share of the James property through their mother.

Plaintiff's petition alleged that defendant and one Tom J. Long entered into collusion to defraud the plaintiff out of her title and interest in the Jefferson county land, and that, pursuant thereto and in bad faith, she caused a proceeding to be instituted in the probate court of Jefferson county to sell the land for the pretended purpose of paying the debts of the C. W. James estate, there being at the time sufficient personal property in the estate to discharge all its debts, that the probate court ordered the land sold, and that defendant fraudulently caused the land to be sold to Tom J. Long for three-fourths of the appraised value, and that such sale had been confirmed and a deed executed and delivered conveying the premises to him, and that such deed had been recorded.

Issues were joined and evidence was presented at length.  It was shown that James had bought the land in 1910 for $40 per acre and at the time of the trial in 1921 it was worth $60 to $70 per acre; that it had been appraised at about $34.81 per acre; and that defendant declined an offer of $40 per acre, and sold it to Tom J. Long at private sale for $26.25 per acre.  There was evidence tending to show that this sale was not *bona fide*, and that Tom J. Long and defendant had a private understanding pertaining thereto whereby he was to hold the land for defendant's benefit, or for the joint benefit of himself and defendant.

The trial court found all the issues in favor of plaintiff, set aside the proceedings in the probate court, and canceled and set aside the deed to Tom J. Long and barred him of all rights thereunder.

While this action was pending the defendant was removed from her position as executrix by the probate court in Missouri, and an administrator with the will annexed was appointed in her stead, and this administrator has been made a party to this action and he supports the judgment and the attitude of the plaintiff in this appeal.

. The defendants contend that this action is a collateral attack on the order, finding and judgment of the probate court, and that this

independent action to set aside the probate court proceedings and to set aside the executor's deed cannot be maintained.

It is perhaps true that practically every grievance alleged by plaintiff except the cancellation of the deed could have been corrected by appropriate proceedings in the probate court; but as to the cancellation of the executor's deed to Long we do not see how that could have been accomplished by any corrective action by the probate court. And it cannot be denied that the plaintiff, under the facts alleged and proved to the satisfaction of the trial court, was entitled not only to have the fraudulent proceedings set aside, but to a cancellation of the deed as well. It seems unreasonable that plaintiff should be required to go to the probate court for part of her relief, and to a court of general jurisdiction for that portion of the relief which it alone could render.

*Klemp v. Winter*, 23 Kan. 699, was an action to recover on a guardian's bond for money belonging to a ward. The defendant guardian had made two annual and one final settlement in the probate court. It was alleged that defendant had deceived the probate court. The defendant contended that the final settlement of a guardian, unless revoked, reopened or appealed from, is conclusive upon the parties, and could not be attacked collaterally, but only by direct proceedings in the probate court. This court said:

"That fraud vitiates everything it touches—final judgments, final orders, final settlements and contracts, as well as things of less consequence—we suppose all persons will admit. And that courts, possessing general equity or chancery jurisdiction, have the power to grant proper relief in all cases of fraud, we suppose will also be admitted. . . .

"We think it is possible that, under sections 568, 575, and 576 of the Code of Civil Procedure, the plaintiff might have had Winter's said settlements in the probate court set aside by the probate court. But this would have been a very inadequate remedy in this case. . . . The whole status of things had changed since said settlements were made, and the probate court had lost its jurisdiction over the parties and over the estate, except, perhaps, to merely set aside said fraudulent settlements. But when they were set aside (if set aside), the plaintiff would be but little nearer to a complete remedy for the wrongs she had suffered than she was before. She would still have to sue in the district court to recover her money which Winter wrongfully detained from her. . . . The probate court had no power to set that contract aside. The district court alone was the only court that could have obtained the requisite jurisdiction over it, so as to set it aside. And so long as this contract remained in force, the setting aside of said fraudulent settlements would have been of no benefit to the plaintiff. Hence it was necessary for the plaintiff, in order to obtain a complete remedy for all the wrongs which she

had suffered, to commence her action in some court that could have or take complete jurisdiction over all the subject-matter of such wrongs." (pp. 703-705.)

Counsel for defendants cite *Fleming v. Bale,* 23 Kan. 88, and a number of later cases which hold that proceedings, judgments and orders of probate and other courts cannot be collaterally attacked. True, but the present action, for relief on account of extrinsic fraud in the probate proceedings and in the sale and conveyance of the property thereunder, is a *direct* and not a collateral attack.

In *Mastin v. Gray,* 19 Kan. 458, 466, it was said:

"Proceedings instituted for the purpose of destroying, impairing, or modifying the force or effect of a judgment for all cases, such as proceedings to reverse, vacate, set aside, declare void, suspend, modify, or perpetually enjoin a judgment, are direct proceedings."

(*Busenbark v. Busenbark,* 33 Kan. 572, 7 Pac. 245; *McAdow v. Boten,* 67 Kan. 136, 72 Pac. 529; *Finche v. Bundrick,* 72 Kan. 182, 83 Pac. 413; *Railway Co. v. Lasca,* 79 Kan. 311, 100 Pac. 278; 1 Black on Judgments, § 297; VanFleet's Collateral Attack, § 2; 18 Cyc. 810, 811.)

In *Leslie v. Manufacturing Co.,* 102 Kan. 159, 163, 169 Pac. 193, it was said:

"Where the fraud complained of is extrinsic to the issues, an independent action is permitted and ordinarily equitable relief is a necessary and pertinent feature of such an action, and it is not necessary to bring it in the inferior court where the first judgment was rendered, especially if such court has no equitable jurisdiction. Moreover, a mere vacation of the collusive judgment in the city court was not all the relief the plaintiff was entitled to."

Defendants also contend that there was no evidence to support the trial court's finding that there was sufficient personal property to discharge the debts of the C. W. James estate. This was not the only nor the controlling ground for the judgment of the district court, but even this cannot be sustained. The debts set up by defendant as a foundation for the authority to sell the real estate aggregated $462.50. This was more than she proved on this trial. The same petition for leave to sell showed assets in bank amounting to $347, and the rent collected from the tenant of the land in controversy was $400.

The record contains no error, and the judgment is affirmed.