No. 29,058.

Lottie M. Fry et al., *Appellees,* v. Henry Heargrave et al., *Appellants.*

(283 Pac. 626.)

Opinion filed January 11, 1930.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison, Getto Mc-Donald,* all of Wichita, *J. B. McKay,* of El Dorado, and *L. H. Hughes,* of Quincy, Cal., for the appellants.

*Charles G. Yankey, John L. Gleason, Kenneth K. Cox* and *J. George Sears,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to quiet title to certain lands derived by purchasing them at an executor's sale authorized and supervised by the probate court of Sedgwick county some years ago.

For many years the property involved herein, comprising 47 acres, belonged to James T. Creson, who died testate on December 14, 1921, in Sedgwick county. Creson had been twice married. By his first wife he had four children who had all grown to maturity. By his second wife, Margie, he had four children, all of whom were minors when he died. About a year or more before Creson's death Margie and James effected a separation agreement whereby a mortgage for $3,000 was placed on the 47 acres, and $2,500 of the money thus realized was paid to Margie, following which she removed to Oregon, taking three of the minor children with her. James and one 9-year-old son, James Orville Creson, remained on the 47-acre property, thus continuing its homestead character until his death.

Margie established a permanent residence in Oregon and brought an action there against James for a divorce, which action may have been interrupted by his death. When James died Margie and the

three children with her hastened back to Kansas and took up their abode on the property. She also obtained custody of her fourth child, James Orville Creson, who had remained in Kansas with his father.

Creson's will devised half of his estate to Margie as provided by the separation agreement outstanding; $5,000 to James Orville Creson; $5 to each of his adult children; and the residue to the four minor children, share and share alike.

In the settlement of Creson's estate Margie had assigned to her and she accepted 12 acres of the property with the improvements as her widow's share; and she bound herself to pay $1,000 of the mortgage which she and her husband had borrowed to raise funds to effectuate the separation agreement. The remainder of the property was sold to satisfy debts and legacies which included the balance of the $3,000 mortgage, the $5,000 legacy devised to James Orville Creson, and costs of the executorship. Margie sold the twelve acres set apart to her for $3,500, paid off her agreed part of the $3,000 mortgage, and removed with her four children to California. At the final settlement of the estate there was a small residue of $47 in cash for each of her children, which was sent to them in due course.

Prompted by the recent discovery of oil in the vicinity of what had been the Creson land, the purchaser at the executor's sale brought this action to quiet his title, naming as defendants the minor heirs of James T. Creson, deceased.

Service on the minor defendants was procured by publication, and on their nonappearance judgment quieting plaintiff's title was decreed. Within six months the minors appeared and applied to have the judgment opened, and tendered therewith their answer. They were let in to defend and their answer challenged the regularity and validity of practically everything that transpired in the probate court which had led up to the executor's sale of the property in the settlement of the testator's estate.

The original plaintiff, Samuel Bright, who held possession of the property by virtue of the executor's deed, died shortly after the judgment quieting title had first been entered, and the cause was revived in the names of the present appellees who were devisees under his will. After an extended hearing, which included the introduction of all the files of the probate court concerning the estate of James T. Creson, deceased, the trial court gave judgment quieting plaintiff's title.

Defendants appeal, assigning many errors. They first address themselves to the proposition that their defense to this action to quiet title raised issues which constituted a direct and not collateral attack upon the probate court proceedings. Unless that contention is correct, any defects and irregularities in the probate court proceedings will not affect the judgment we have to review.

It is axiomatic that the judgment of a court of competent jurisdiction cannot be attacked collaterally except for extrinsic fraud. If the fraud is intrinsic it must be corrected in the action which culminated in the judgment, by supplemental proceedings, or by appellate review. Otherwise there never would be an end to litigation, nor any public or private confidence in the binding force and finality of a court's judgment.

The distinction between intrinsic and extrinsic fraud has often been expounded by this and other courts. (*Plaster Co. v. Blue Rapids Township*, 81 Kan. 730, 735, 106 Pac. 1079; *Huls v. Gafford Lumber and Grain Co.*, 120 Kan. 209, 215, 243 Pac. 306; *Potts v. West*, 124 Kan. 815, 262 Pac. 569; *Irvine v. Eysenbach*, 126 Kan. 362, 267 Pac. 995.)

There can be no doubt that the probate court of Sedgwick county had jurisdiction of the estate of James T. Creson. He was a long-time resident of that county and died there. His will was properly probated there. It was under the supervising jurisdiction and sanction of the probate court of Sedgwick county that the 47 acres of land constituting the principal part of James T. Creson's estate was disposed of—12 acres to his widow and the remainder as devised to his minor children, subject, of course, to the payments of his debts. It is quite beside the point to suggest in this case that the 47 acres was a homestead. Homestead of whom? Not of Margie Creson, who had hied herself to Oregon and established a domicile there. Nor of her minor children, for their domicile was wherever she had fixed her place of abode. (*Modern Woodmen v. Hester*, 66 Kan. 129, 71 Pac. 129.) And homestead or not, it was subject to the mortgage of $3,000, and that mortgage had to be satisfied. The minors were represented in all the proceedings in the probate court by guardians *ad litem*—by substantially the same counsel who assume to represent them in this lawsuit. The authority of counsel to appear and bind the minors was just as strong then as it is now. That the original order of the probate court to sell the property within one year was not observed is of no consequence. That was

an order of court, not a rule of statute, and the probate court could condone its breach, and ratify and confirm the sale made at a later date, and did so. It cannot be positively declared that there was no action taken in the probate court on February 18, 1925, to warrant the entry of the *nunc pro tunc* order on June 15, 1925. The fact that the probate judge, testifying three years later, could not recall the incident proves nothing, while the record speaks for itself. Moreover, since the later sale of the property by the executor was approved and confirmed, it was not an imperative precaution that there should have been an order of February 18 nor a *nunc pro tunc* record thereof made on June 15. The executor's sale was neither void nor voidable because of noncompliance with some provision of statute, nor because the sale of part of the 47 acres would have been sufficient to satisfy the mortgage. According to Creson's will the legacy of $5,000 to the 9-year-old son had also to be realized out of Creson's estate, which chiefly consisted of the 47 acres. (*Bowlus, Executor, v. Winters,* 117 Kan. 726, 233 Pac. 111.) The foregoing merely summarizes the points which appellants would have a right to press upon our attention if this were a review of a judgment of the district court on an appeal from the probate court. As it comes to us, however, we have little concern with them. Any error of law, any abuse of discretion in the disposition of these matters (and this court discerns none) could only be corrected on appeal—certainly not in this collateral action.

Having jurisdiction of the Creson estate, its settlement under the sanction and approval of the probate court must stand. A painstaking perusal of the abstract of 168 pages, counter abstract of 21 pages, and of appellants' brief of 106 pages reveals nothing which savors of fraud of any sort, extrinsic or intrinsic. No self-serving, no improvidence, or other improper conduct on the part of the executor was shown; no injustice was practiced on the minors, nor is anything suggested in the assignment of error or appellants' brief which would warrant further discussion. The fact that oil has recently been discovered on what was once the property of these minors, thereby greatly enhancing its value, does not alter the binding force of the executor's deed in the slightest degree.

The judgment is affirmed.

JOCHEMS, J., not participating.