## No. 33,848

JULIA SHUCKROW et al., *Appellees*, v. JOHN JOSEPH MALONEY, Administrator c. t. a., et al., *Appellants.*

(83 P. 2d 118)

Opinion filed October 8, 1938.

T. F. *Railsback,* of Kansas City, and *Gregory E. Hodges,* of Kansas City Mo., for the appellants.

*Howard E. Payne,* of Olathe, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: The principal legal question presented in this appeal relates to the propriety of an independent lawsuit in the district court to recover a sum of money allowed and paid by order of the probate court on a claim against an estate still in course of administration.

Antecedent matters necessary to an understanding of this action may be summarized thus:

One Cornelius Shuckrow, a native of Connecticut, left that state in 1875 and never returned. For varying intervals of time he sojourned in Pennsylvania, in Canada, in Kansas, and in Louisiana. He had married, but his wife died several years before him, and they had no children or other descendants. Shuckrow conducted a hotel at Gueydan, Vermilion Parish, in Louisiana, in 1931, but the record does not show how long he lived there.

About January 1, 1933, when Shuckrow was about 80 years old, he came to Johnson county, Kansas, and took up his abode with Mrs. Kate Maloney, a sister of his deceased wife. About July 3, 1934, he left this abode and went to the home of another Mrs. Maloney in Missouri, where he resided for about six months.

About January 15, 1935, he left Missouri and returned to his former home at Gueydan, La., where he died some three weeks later, on February 5, 1935.

On March 2, 1935, there was filed in the probate court of Johnson county, Kansas, a petition by John Joseph Maloney, son of the Mrs. Kate Maloney with whom Shuckrow had resided from January, 1933, to July, 1934. In it he alleged that Shuckrow had died a resident of Johnson county; that he had left an estate estimated at $8,000; and that the names of his heirs or other persons interested in his estate were unknown. He prayed that he be appointed administrator. An order appointing the petitioner was made the same day and he qualified forthwith.

Following this appointment, Maloney, the administrator, went to Shuckrow's former home in Gueydan, La., and among his effects the administrator discovered a will of Shuckrow executed on January 29, 1931. Maloney brought this will back to Johnson county and on March 7, 1935, filed a petition in the probate court asking that it be probated. The court appointed the probate judge of Calcasieu Parish in Louisiana as commissioner to take depositions

of the testamentary witnesses; and in due time the account of Maloney as administrator under his first appointment was settled and he was discharged on March 27, 1935; and he was at once reappointed as administrator c. t. a. and the estate was reopened for further proceedings.

While the first administration was still in existence, on March 20, 1935, one Harry Maloney, younger brother of the administrator, filed a claim against the Shuckrow estate for the sum of $1,620 for alleged services to Shuckrow as chauffeur and mechanic from January 1, 1933, to July 3, 1934, at the rate of $90 per month. The administrator consented that the claim might be heard at any time. On the day Shuckrow's will was admitted to probate, March 27, 1935, the claim was allowed in full by the probate court. Thereafter, time not shown, Maloney, administrator c. t. a., paid his brother's claim, and reported the fact in his first annual account filed on February 8, 1936.

At this point in our chronicle of happenings, we now turn to look at the contents of Shuckrow's will. In substance, it named a bank in Louisiana as his administrator (executor) of his estate; bequeathed $1,000 to the brother of his deceased wife and the same amount to each of her sisters, Mary M. Wiggins and Kate Maloney, mother of the administrator. The entire residue of his estate was bequeathed to his own four brothers and three sisters, Julia, Mary and Ellen Shuckrow—all of whom, the testator assumed, were still alive and residents of Connecticut.

On August 8, 1935, the three persons last named filed a motion in the probate court to reopen the hearing on the claim of Harry Maloney for eighteen months' alleged services to Shuckrow as chauffeur and mechanic. In this motion it was alleged that the moving parties were residuary legatees under the will of Shuckrow, that Harry Maloney's claim was unjust, exorbitant and not a debt of Shuckrow at the time of his death, that its allowance was procured by working a fraud on the court, that the movants had no notice of the filing, presentation or allowance of the claim within time to appeal from its allowance. It was also alleged that evidence had recently been discovered tending to show that the claim was unjust, spurious and not owing to Harry Maloney from Shuckrow's estate.

The foregoing motion was met by an adverse motion to quash, filed by Harry Maloney, on the ground that it was in effect a request for a new trial filed out of time, and because the court was without

jurisdiction to hear it. The motion of the three movants was heard and denied on August 30, 1935—the order of the court reciting that as the claim had been allowed "and no appeal having been taken from order during the term or ten days thereafter, the court finds that it is without jurisdiction to hear the motion for a rehearing in said claim, and the motion to quash said motion is therefore sustained."

Thereafter, on October 18, 1935, this independent action was begun by these three sisters of Shuckrow against John Joseph Maloney, administrator c. t. a., and against Harry Maloney for the recovery of $1,620, being the amount of the claim for alleged services as chauffeur and mechanic to Shuckrow which the probate court had allowed and which the administrator had paid.

In the petition plaintiffs alleged that they were residuary legatees under the will of their brother, Cornelius Shuckrow. Other pertinent facts were alleged as narrated above, and it was alleged that the administrator and the claimant fraudulently filed the aforesaid claim for services to the amount of $1,620, and—

"6. That said false and fraudulent claim was filed on March 20, 1935, in said probate court, was exhibited to John Joseph Maloney on March 19, 1935, and allowed by the court on March 27, 1935. . . .

"8. That the allowance of said claim was procured by the collusion of said defendants in practicing a fraud upon the probate court of Johnson county, Kansas, and by falsely representing to said court that said claim was justly due, owing and unpaid to said claimant from the deceased, whereas in truth said deceased was not indebted to said defendant, Harry Maloney, in any sum at the time of the death of the deceased, which fact the defendants well knew at the time they fraudulently procured the allowance of said claim by the probate court of Johnson county, Kansas.

. . . . . . . . . . .

"10. That the time for appeal from the allowance of said claim expired prior to the discovery of said fraud, and that these plaintiffs have no adequate remedy at law.

"Wherefore, plaintiffs pray that they have and recover of and from the defendants the sum of $1,620, together with interest at six percent per annum from the 27th day of March, 1935, costs of suit and such other and further relief as may be just and equitable."

To this petition defendants demurred on various grounds—the district court's want of jurisdiction, plaintiffs' want of capacity to sue, and no cause of action stated.

This demurrer was overruled, and the defendants then answered with a general denial.

The cause was first tried without a jury. On its own motion the

court granted a new trial and called in an advisory jury. Evidence was adduced pro and con on the question whether in fact Harry Maloney had performed any services as chauffer and mechanic for Shuckrow, as represented to and allowed by the probate court and as paid by the administrator. The only question submitted for the jury's consideration read:

"Were or were not the defendants guilty of collusion or fraud in securing the allowance of the claim of $1,620 in the probate court of Johnson county, Kansas . . .?"

The jury answered this question by returning a verdict for plaintiff. Certain post-trial motions and rulings thereon appear in the record which need no attention unless it be on one order of the district court wherein it made a computation of interest on the sum of $1,620 from March 27, 1935, to December 4, 1937. On the latter date judgment was entered against both defendants for the aggregate amount of $1,863.54.

The administrator appeals, raising various errors, some of which may be technically sufficient to require the appeal to be disposed of thereon, but we prefer to deal at the outset with the main question— Was this independent action maintainable in the district court while the estate was still in course of administration in the probate court and had not yet reached the stage of final settlement?

Counsel for the appellees seeks to justify the action on the ground that where the relief sought is on account of *extrinsic* fraud an independent action can be maintained. That rule of law is perfectly sound. But where such independent action is sought to be maintained, the question of vital concern is, Was the alleged fraud *extrinsic* or *intrinsic?* If the former, an independent action could be maintained to correct it, if brought in time and in conformity with the other provisions of the civil code. But if the fraud alleged was not *extrinsic*, then the requisite steps to secure redress must be taken in the identical case or in supplemental proceedings in that identical case in which the fraud was perpetrated, not in an independent lawsuit. (*Fry v. Heargrave*, 129 Kan. 547, 549.) In *Huls v. Gafford Lumber & Grain Co.*, 120 Kan. 209, 243 Pac. 306, the action was to set aside a judgment which was brought about by various fraudulent practices. In its opinion this court said:

"There was no want of evidence to establish the fraud of the prevailing party in the mechanic's lien case—fraud demonstrated by the record of that case, and by the oral testimony adduced in this case. . . . So this court has no trouble in discovering sufficient evidence to support the trial court's

finding of fraud. But that is not enough. Fraud involved in judicial proceedings is or may be of two kinds—intrinsic and extrinsic. And if the fraud which has crept into judicial proceedings is intrinsic, it must be corrected, if at all, by a motion for a new trial filed within three days after the judgment tainted with such fraud is rendered (Civ. Code, § 306), or by a petition for a new trial, if applicable, filed not later than the second term after the discovery of the fraud (Civ. Code, § 308). Whether such new trial is invoked by motion or by petition, such proceedings are supplemental to those of the original action and must be undertaken in that identical case. If the fraud or other miscarriage of justice complained of is intrinsic, the court's jurisdiction to correct it is not otherwise invocable. (*Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 735, 106 Pac. 1079; *McCormick v. McCormick,* 82 Kan. 31, 36, 38, 107 Pac. 546; *Garrett v. Minard,* 82 Kan. 338, 108 Pac. 80; *Blair v. Blair,* 96 Kan. 757, 759, 760, 153 Pac. 544; *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93, and Rose's Notes thereto at p. 512 *et seq.;* 1 Black on Judgments, 2d ed., § 292.)" (pp. 214, 215.)

Elsewhere in the same case this court said:

"If, however, the fraud was extrinsic to the issues, it may be subjected to a direct attack in an independent action or special proceeding brought for that purpose. (*Blair v. Blair,* supra, 762 *et seq.; Leslie v. Manufacturing Co.,* 102 Kan. 159, 169 Pac. 193; *James v. Young,* 111 Kan. 310, and citations, 206 Pac. 905.) . . . Can the conduct of the lumber company's attorney be properly characterized as extrinsic fraud? To bring a groundless and unjust suit is a species of fraud, of course, but it is the very opposite of extrinsic fraud." (pp. 215, 217.)

In the Huls case, *supra,* familiar Kansas cases are cited to the same effect. In the later case of *Potts v. West,* 124 Kan. 815, 817, 262 Pac. 569, plaintiff brought an independent action to set aside a judgment in another and prior lawsuit on the alleged ground that it had been procured by fraud. A demurrer to the petition was sustained, and the cause was brought here for review. In affirming the judgment this court, in part, said:

"Falkenberg asks that the petition to vacate be considered a petition in a new and independent suit in equity, to set aside the judgment quieting title on the ground of fraud. That may not be done, because the fraud of which he complains was intrinsic in the determination of the action to quiet title. Equity may set aside a judgment procured by extrinsic fraud, but public policy requires there shall be an end to litigation, and when a party to an action has been duly served, and has not been prevented by actual fraud from defending on the merits, he has had his day in court, and *may not appeal to equity to undo the result on the ground the stated cause of action was based on fictitious grounds or was sustained by perjury.* [Italics ours.] (*Blair v. Blair,* supra.) The distinction between extrinsic fraud, which prevents fair presentation of the controversy to the court, and intrinsic fraud, which relates to fair determination of the controversy by the court, was clearly pointed out in the case of *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 735, 106 Pac.

1079. It was there said that equity will relieve against extrinsic fraud, but not against intrinsic fraud, and authorities for the doctrine were collated. The subject was again treated in a recent hard case in which a distressingly fraudulent judgment was rendered in December, 1919, and the petition to vacate was not filed until January, 1923. (*Huls v. Gafford Lumber & Grain Co.,* 120 Kan. 209, 215, 243 Pac. 306.)" (p. 817.)

In the American Law Institute's recent text on Restitution are simple illustrations of cases of intrinsic and extrinsic fraud where an independent lawsuit may and may not be maintained, viz.:

"A obtains judgment against B by false testimony at the trial. B pays the judgment. On discovery of the facts, B brings an action at law against A for restitution. He is not entitled to restitution." (Sec. 72, p. 294.)

A plain case of intrinsic fraud.

"A is sued by B, who kidnaps A's witnesses and causes A to believe that they are dead. As a result of their failure to testify, B obtains judgment, of which A pays one half. Discovering the facts, A brings a separate suit in equity seeking to have the enforcement of the judgment enjoined and asking for restitution of the part already paid. A is entitled to this relief." (Sec. 72, p. 296.)

A plain case of extrinsic fraud.

See, also, *Putnam v. Putnam,* 126 Kan. 479, 268 Pac. 797; *Williams v. Williams,* 138 Kan. 310, 26 P. 2d 258; *Brenneisen v. Phillips,* 142 Kan. 98, 45 P. 2d 867.

To justify the present action and the judgment entered thereon, the appellees cite the case of *McAdow v. Boten,* 67 Kan. 136, 72 Pac. 529. That case does sanction an independent lawsuit for relief on account of collusive fraud perpetrated in the probate court by an administrator and one who has a claim against an estate; but in that case the estate had been wound up and the administrator discharged. In the opinion the court cites from *Gafford, Guardian, v. Dickinson, Adm'r,* 37 Kan. 287, 15 Pac. 175, 177, in which Mr. Justice Valentine said:

"It is true that in the exercise of jurisdiction by the district courts in cases connected with the settlement of the estates of deceased persons, there are some limitations. (*Johnson v. Cain,* 15 Kan. 532; *Stratton v. McCandless,* 27 Id. 297; *Kothman v. Markson,* 34 Id. 542.) Generally, while the estate is in the course of settlement in the probate court the district court will not exercise its jurisdiction, and this for the reason that the jurisdiction of the district court in such cases is equitable only, and the parties have a plain and adequate remedy in the probate court. The jurisdiction of the district court in all cases like this is merely equitable, and therefore it will generally refuse to exercise such jurisdiction in any case where the parties have another plain and adequate remedy. In this case, however, the settlement of the

estate is no longer pending in the probate court. According to the records of the probate court, the estate was finally settled about a year before this action was commenced; and therefore, unless the plaintiff now has a remedy in the district court, she has no remedy." (p. 291.)

In *Eaton v. Koontz*, 138 Kan. 267, 25 P. 2d 351, three sisters caused probate proceedings to be instituted in Colorado and Kansas for the sale of lands belonging to the estate of their father. They had a niece, daughter of their dead brother, of whose existence they well knew. They made the false statement that they, the three sisters, were the sole and only heirs of their father; and the lands of their father's estate were sold and the proceeds divided on that basis. An independent action was entertained in the district court at the instance of the defrauded niece, and she was adjudged to have an undivided interest in her grandfather's lands disposed of in the probate proceedings. In affirming the judgment, Mr. Justice Burch stated the substance of appellants' contentions thus:

"The attitude of defendants is perfectly simple. The probate court of Colorado had jurisdiction over the subject of allowance of claims against the Dodge estate, and allowed them. The Kansas court had jurisdiction over the subject of sale of land to pay debts. Notice of hearing of the application to sell was given by publication, and in contemplation of law, plaintiff had her day in court. The order of allowance of claims by the Colorado court was prima facie evidence of the existence of debts. The Kansas court ordered the land sold, and approved the sale which was reported. The forms of the law having been observed, plaintiff is remediless. True, plaintiff charged fraud; but relief on the ground of fraud may be granted only for extrinsic fraud in fact. If there was fraud, it related to determination of the issues, existence of debts, and necessity to sell land to pay debts. Such fraud is intrinsic, and the district court was powerless to do anything about it." (p. 271.)

Further along in the opinion it was said:

"The court has distinguished between extrinsic fraud and intrinsic fraud occurring in the course of a proceeding. The distinction is sound, and is adhered to. Extrinsic fraud consists in preventing fair presentation of issues. Intrinsic fraud relates to fair determination of issues. (*Potts v. West*, 124 Kan. 815, 262 Pac. 569.) Some of the conduct displayed in the proceedings under consideration may be classified as extrinsic fraud, but it is not necessary to catalogue what was extrinsic and what was intrinsic. Practical application of the distinction is often difficult, and the court does not propose to become so involved in rules and distinctions and categories of its own making or recognition that it becomes impotent to deal in a forthright manner, when necessary, with that most persistent of all baleful practices, the practice of fraud." (p. 272.)

See, also, *Leslie v. Manufacturing Co.*, 102 Kan. 159, 169 Pac. 193; *James v. Young*, 111 Kan. 310, 206 Pac. 905.

From these instructive cases it will be seen that where an estate has been wound up and the administrator discharged this court has been rather lenient in giving countenance to independent action for relief on account of fraud in the probate proceedings, and has not rigidly measured the aggrieved parties' right to maintain them on the technical question whether the fraud complained of was extrinsic or intrinsic. As Mr. Justice Burch said in *Eaton v. Koontz,* supra, "The court does not propose to become so involved in rules and distinctions and categories of its own making or recognition that it becomes impotent to deal in a forthright manner, when necessary, with that most persistent of all baleful practices, the practice of fraud." (p. 273.)

In the present case, however, the estate of Shuckrow is still in course of administration, and our decisions are many which hold that while the probate court is exercising jurisdiction of an estate not yet settled, the district court has no jurisdiction of any subject matter properly justiciable in the probate court. While in our earlier cases like *Gafford, Guardian, v. Dickinson, Adm'r,* supra, it was said that the district court "will not exercise" its equitable jurisdiction and "will generally refuse" to exercise it while the estate is still in course of administration in the probate court, in our later decisions we have squarely held that the district court does not have jurisdiction under such circumstances. Thus, in *Fry v. Riley,* 131 Kan. 252, 291 Pac. 748, the current rule of procedural law is thus stated:

"Where the probate court is already exercising jurisdiction in the settlement of an estate and the matter is still pending in that court, the district court is without jurisdiction to maintain an action under R. S. 22-1001, 22-1002 and 22-1004 by a creditor against the administrators and the sureties on their bonds, for failure to perform their duties as such administrators." (Syl.)

In *Wright v. Simpson,* 142 Kan. 507, 51 P. 2d 1, the first paragraph of the syllabus reads:

"The district court does not have jurisdiction, in the first instance, to determine the amount of indebtedness due the estate of a testator from any particular debtor when the will has been admitted to probate and administration of the estate is still pending in the probate court."

In the recent case of *In re Estate of Park,* 147 Kan. 142, 75 P. 2d 842, the same question had to be considered, and it was there said:

"The plain intention of the statutes referred to is that the acts of the administrator shall be subject to full and complete examination and determination upon final settlement. . . . The heirs, on the other hand, had a right to await final settlement and make such claims then against the administrator as they might have because of his acts in the management of the estate.

". . . That this was the intention of the legislature is evident from the provisions of G. S. 1935, 60-3823, which provides that:

"'Until the legislature shall otherwise provide, this code shall not affect . . . proceedings under the statutes for the settlement of estates of deceased persons.'" (pp. 149-151.)

See, also, *Correll v. Vance*, 127 Kan. 840, 275 Pac. 170; *Parsons v. McCabe*, 127 Kan. 847, 275 Pac. 173.

Of course, it is not difficult for a pleader to state a cause of action for extrinsic fraud; and for the purpose of this appeal it may be conceded without a positive decision that plaintiffs' allegations touching collusion between the administrator, John Joseph Maloney, and the claimant, his brother Harry Maloney, were sufficient to state a case for relief on the ground of extrinsic fraud. The evidence, however, failed utterly to establish such collusion. True, the administrator did not personally appear in the probate court to resist his brother's claim. He testified that he knew nothing to offer in opposition to it. But his attorney did appear at the hearing and made some cross-examination of his brother's witnesses. The probate judge himself testified that ten or twelve witnesses appeared and gave testimony in support of the claim and that he, the probate judge, knew those witnesses personally and that they were all reputable people. Where an array of witnesses swear to one set of facts in the probate court, it does not affect the binding force of the judgment based thereon, that another array of witnesses can be mustered in the district court who will swear to a different set of facts. Otherwise a disputed question of fact could never be adjudicated to a finality.

Manifestly the judgments of one court cannot be successfully attacked and set aside in another court in an independent lawsuit on such a showing as presented by this record.

The other questions raised by defendants need not be treated at length. However, defendants are quite correct in their contention that these plaintiffs, being only three of the seven residuary legatees named in Shuckrow's will, were not entitled to maintain this litigation on the pleading which they filed. The nonappearance of the other residuary legatees should have been explained at the inception

of the proceedings. That it has been informally explained since this lawsuit was tried and decided is no answer to defendants' timely objection to the sufficiency of their pleading. Another objection to the plaintiffs' pleading was that its purpose, as explained by their counsel, was to recover for plaintiffs themselves the sum of $1,620. On any rational theory the proceedings should have been brought on behalf of the Shuckrow estate and for its benefit.

Again, we remark that plaintiffs appear to take it for granted that they were excused from seeking redress in the probate court because of lapse of time; and that they had no redress by appeal from the order of the probate court made on August 30, 1935, denying their motion to reopen the hearing on Harry Maloney's claim for $1,620. Obviously plaintiffs' motion was intended as a pleading to set aside the order of March 27, 1935, allowing that claim. No existing statute, no citation of authority based on presently existing statute, is referred to which supports the assumption that no appeal would lie from the probate court's ruling of August 30, 1935. And wherever there is any redress by appeal, there certainly can be none by an independent action in the district court. Indeed, it is far from clear that plaintiffs are even yet completely remediless if they can make good in the probate court their charge of collusion between the claimant and the administrator when the latter presents his final account and asks for his discharge. This latter point cannot be decided at this time, but see *In re Estate of Brown*, 147 Kan. 395, 76 P. 2d 857. Consult, also, G. S. 1935, 22-901 *et seq.*, 22-1101 *et seq.*, and annotations.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of appellants.