No. 34,342

MILDRED LAIDLER, *Appellee*, v. CHESTER PETERSON, *Appellant*.

(92 P. 2d 18)

Opinion filed July 8, 1939.

*D. G. Smith,* of Girard, for the appellant.
*Simeon Webb,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellant filed a petition to set aside and vacate a judgment theretofore entered against him in an action for damages.

Plaintiff's demurrer to the petition was sustained, and defendant appeals.

The question presented is whether under the facts alleged the petitioner was entitled to a hearing on the petition to vacate the judgment.

On April 22, 1938, a jury returned a verdict of $300 in favor of Mildred Laidler in an action brought by her against Chester Peterson for personal injuries suffered in an automobile accident. No appeal was taken. On December 9, 1938, Peterson filed a petition to vacate the judgment and alleged that the verdict and judgment were obtained against him as a result of fraud practiced by the plaintiff and that the fraud could not with reasonable diligence have been discovered during the term at which the verdict and judgment were rendered, or within three days after the verdict and judgment, and that the fraud was discovered by him on the 6th day of December, 1938. He alleged that the plaintiff conspired with her attorney, and with a physician who became a principal witness in the case, for the purpose of defrauding the defendant in bringing a false and groundless action for damages against him and claiming that plaintiff had received painful, serious and permanent injuries in the automobile accident, although knowing that such allegations were untrue; that on December 6, 1938, plaintiff's attorney called on him "at his store in the town of Farlington, Kansas, for the purpose of serving a notice of attorney's lien upon him attempting to collect or make some compromise of the fraudulent judgment so obtained by plaintiff and her coconspirators, as aforesaid"; that in the course of the conversation at that time plaintiff's attorney admitted to him that the plaintiff did not receive any injuries in the automobile accident, that the doctor who testified had not treated the plaintiff for any of said alleged injuries as he had testified, and that plaintiff was not indebted to him in the sum of $45, or in any other amount for said alleged injuries as theretofore testified to in the trial; that the $45 alleged at the trial to be owing to the doctor was not on account of treatment of injuries of the plaintiff, but was for two X-ray pictures, at $10 each, made for the purpose of bringing the action for damages but which were not used upon the trial, and for $25 which he, the attorney, had agreed to pay to the doctor for appearing as a witness in the trial. Peterson further alleged that the attorney for the plaintiff told him in the same conversation he had sued him because he thought he had insurance and that he, the defendant, could

recover from the insurance company and that his client, the plaintiff, understood he had inherited a large sum of money upon the death of one Walford Peterson, thought by the plaintiff to be defendant's father. Peterson further alleged that the attorney told him that the only money which plaintiff or her husband owed to the doctor was for professional services to the plaintiff and her family at a time long prior to the automobile accident, and that the plaintiff owed the attorney the sum of $50. Upon these allegations and others incidental thereto, and which need not here be recited, Peterson asked the court "by reason of the newly discovered evidence" to vacate the judgment. The plaintiff demurred to the petition on the principal ground that it did not state facts necessary to give the court authority to make the order prayed for, and the demurrer was sustained.

The question here presented is not whether the judgment should be vacated, but whether facts were alleged which entitled the petitioner to a hearing on the petition to vacate. In determining that question all well-pleaded allegations of the petition must be considered as true, since the case is here upon demurrer. It should also be noted that this is not a collateral attack upon the judgment, but an action brought by one of the parties in the same proceeding.

Three sections of the code of civil procedure are involved—G. S. 1935, 60-3005, 60-3007, subdivision 4, and 60-3008. Section 60-3005 provides for the granting of a new trial where the grounds alleged therefor could not with reasonable diligence have been discovered before, but are discovered after the term at which the verdict was rendered and more than three days after the verdict, application to be made by petition and filed not later than the second term after discovery. Section 60-3007, subdivision 4, provides that judgments may be vacated or modified at or after the term at which such judgment was rendered "for fraud, practiced by the successful party, in obtaining the judgment or order," and 60-3008 provides that such proceedings to vacate can only be commenced within two years after the judgment was rendered. In the instant case the judgment was rendered on June 1, 1938, and the petition to vacate was filed on December 9, 1938. The petition was filed within the time prescribed in either of the sections referred to.

A majority of the court has reached the conclusion that the petition was good as against demurrer, but there is disagreement as to the particular section of the code which is applicable. One view sup-

ports the petition under the provisions of 60-3005 and another under those of 60-3007, both sections being invoked by appellant.

Section 60-3005 provides that new trials may be granted on account of newly discovered evidence which with reasonable diligence could not have been discovered at the time of the trial. The petition here, while technically a petition to vacate, and not in so many words a petition for a "new, trial," met the conditions laid down in the section. It adequately pleaded newly discovered evidence, it was filed "not later than the second term after discovery," and assuming as against the demurrer, that the admissions were made as and when alleged, it cannot be said that there was any lack of diligence in discovery by the petitioner.

In the case of *Huls v. Gafford Lumber & Grain Co.*, 120 Kan. 209, 243 Pac. 306, this court stated that "intrinsic" fraud may be a basis for relief under section 60-3005 (then Civil Code, § 308). In that case the court said:

" . . . if the fraud which has crept into judicial proceedings is intrinsic, it must be corrected, if at all, by a motion for new trial filed within three days after the judgment tainted with such fraud is rendered (Civ. Code, § 306) or by a petition for a new trial, if applicable, filed not later than the second term after the discovery of the fraud (Civ. Code, § 308). Whether such new trial is invoked by motion or by petition, such proceedings are supplemental to those of the original action and must be undertaken in that identical case." (p. 215.)

We next consider the provisions of section 60-3007, *fourth*, which provides for vacating a judgment for "fraud, practiced by the successful party, in obtaining the judgment or order." It is contended by appellee that the fraud referred to in that section is "extrinsic" fraud, that the fraud alleged was entirely "intrinsic," and that therefore the petition was subject to demurrer. It is difficult and perhaps impossible to harmonize some of the statements made upon that proposition in different decisions of this court. In most cases, however, an examination of the particular facts dispels the seeming conflict. Strangely, one of the cases most frequently cited in support of the view that the fraud contemplated by this section of the code is *"extrinsic"* fraud only, is the case of *Potts v. West*, 124 Kan. 815, 262 Pac. 569. Careful examination, however, of the facts in that case discloses that it in fact supports the opposite view. In that case the petition to vacate was filed about six years subsequent to the judgment. The court stated that the proceedings were governed by the provisions of the code which required that action be brought

within two years. The court then proceeded to discuss the contention of the petitioner that the petition to vacate might be considered a new and independent suit in equity and as such be independent of the code provisions. It was upon that point that the court said, "That may not be done, because the fraud of which he complains was *intrinsic* in the determination of the action to quiet title. Equity may set aside a judgment procured by *extrinsic* fraud." In other words, being filed out of time, under the code, it would have to be based, as an independent proceeding in equity, upon *"extrinsic"* fraud. Several cases were therein discussed, among them the case of *Harvey v. Dolan,* 103 Kan. 717, 176 Pac. 134. The latter case involved an action to open up a decree in a former suit to quiet title, and it was alleged that in the petition to quiet title certain false and fraudulent allegations had been made. The action to vacate was not brought until six years after the rendition of the judgment and the case simply held that the petition could not be entertained, not having been filed within two years. In *Elfert v. Elfert,* 132 Kan. 218, 294 Pac. 921, it was held that the judgment could not be vacated because the petition had not been filed within the time prescribed by sections 60-2530 and 60-3007, which were therein involved, and the opinion continues with this paragraph:

"Appellant also contends that this action should be treated as an equity proceeding to set aside the judgment on the ground of fraud. However, the fraud in this case that is alleged is intrinsic to the action, and under the rule laid down in *Potts v. West,* 124 Kan. 815, 262 Pac. 569, could not be used as a basis for an independent suit in equity." (p. 223.)

The court there plainly indicated that it is only in the case of independent proceedings in equity, not based upon the code, where allegations of "intrinsic" fraud will not be entertained. (See, also, *Steele v. Duncan,* 47 Kan. 511, 28 Pac. 206; *Laithe v. McDonald,* 12 Kan. 340; *Laithe v. McDonald,* 7 Kan. 254; *Railway Co. v. Lovelace,* 57 Kan. 195, 45 Pac. 590.)

There are other Kansas cases, however, holding to the contrary. Perhaps the principal case is *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079. While that case contains very strong statements to the effect that judgments cannot be vacated under section 60-3007 because of "intrinsic" fraud, the significant fact may be noted that it appears clearly from the original briefs in the case that it was an *independent action* and *not a proceeding in the same suit.* Independent actions to vacate, and not supplemental proceed-

ings, were also involved in the cases of *Garrett v. Minard,* 82 Kan. 338, 108 Pac. 80; *Cheever v. Kelly,* 96 Kan. 269, 150 Pac. 529; *Fry v. Heargrave,* 129 Kan. 547, 283 Pac. 636, and *Wagner v. Beadle,* 82 Kan. 468, 108 Pac. 859, which involved an independent action begun six years after the judgment. In the cases of *McCormick v. McCormick,* 82 Kan. 31, 107 Pac. 546; *Miller v. Miller,* 89 Kan. 151, 130 Pac. 681, and *Bleakley v. Barclay,* 75 Kan. 462, 89 Pac. 906, relief was sought against foreign judgments. *Blair v. Blair,* 96 Kan. 757, 153 Pac. 544, involved a petition to set aside a divorce decree entered thirty-two years previously. In *Putnam v. Putnam,* 126 Kan. 479, 268 Pac. 797, the motion to set aside a decree in a divorce action was filed nine years after the judgment.

It thus appears that most of the cases which support the view that "extrinsic" fraud only can be the basis for actions under section 60-3007 are distinguishable from the case at bar. While it was said in the recent case of *Rogers v. J. R. Oil and Drilling Co.,* 149 Kan. 807, 89 P. 2d 847, that allegations of "intrinsic" fraud could not be entertained, the petition was held insufficient for want of allegations of facts upon which to base a charge of conspiracy and fraud and much stress was laid upon the fact that there was no allegation that the fraud had been newly discovered and no allegation that appellants were not fully aware of the alleged fraud at the time the various orders and judgments were rendered. In those vital particulars the case differs fundamentally from the one at bar.

In a discussion relative to *extrinsic* and *intrinsic* fraud it was said in *Shuckrow v. Maloney,* 148 Kan. 403, 83 P. 2d 118:

"Counsel for the appellees seeks to justify the action on the ground that where the relief is on account of *extrinsic* fraud an independent action can be maintained. That rule of law *is* perfectly sound. But where such independent action is sought to be maintained, the question of vital concern is, Was the alleged fraud *extrinsic* or *intrinsic?* If the former, an independent action could be maintained to correct it, if brought in time and in conformity with the other provisions of the civil code. But if the fraud alleged was not *extrinsic,* then the requisite steps to secure redress must be taken in the identical case or in supplemental proceedings in that identical case in which the fraud was perpetrated, not in an independent lawsuit." (p. 407.)

In view of the conflict and some confusion of reasoning within some of the cases upon the question of whether actions under subdivision 4 of section 60-3007 brought within two years may be based upon "intrinsic" fraud, it seems unnecessary to discuss at length the differences between "extrinsic" and "intrinsic" fraud. The code

itself uses neither adjective, and simply provides that judgments may be vacated "for fraud, practiced by the successful party, in obtaining the judgment or order." In discussing the matter of "extrinsic" and "intrinsic" fraud Mr. Justice Burch, in a vigorous opinion in the case of *Eaton v. Koonz,* 138 Kan. 267, 25 P. 2d 351, said:

"The court has distinguished between extrinsic fraud and intrinsic fraud occurring in the course of a proceeding. The distinction is sound, and is adhered to. Extrinsic fraud consists in preventing fair presentation of issues. Intrinsic fraud relates to fair determination of issues. (*Potts v. West,* 124 Kan. 815, 262 Pac. 569.) Some of the conduct displayed in the proceedings under consideration may be classified as extrinsic fraud, but it is not necessary to catalogue what was extrinsic and what was intrinsic. Practical application of the distinction is often difficult, and the court does not propose to become so involved in rules and distinctions and categories of its own making or recognition that it becomes impotent to deal in a forthright manner, when necessary, with that most persistent of all baleful practices, the practice of fraud." (p. 272.)

Quoting the above language with approval Mr. Chief Justice Dawson, writing for the court, expressed a similar view in *Shuckrow v. Maloney,* supra. While the case dealt with relief sought in probate proceedings, the comment made as to the attitude of the court with reference to distinctions between "extrinsic" and "intrinsic" fraud is not without pertinency here. It was there said:

"From these instructive cases it will be seen that where an estate has been wound up and the administrator discharged this court has been rather lenient in·giving countenance to independent action for relief on account of fraud in the probate proceedings, and has not rigidly measured the aggrieved parties' right to maintain them on the technical question whether the fraud complained of was extrinsic or intrinsic." (p. 411.)

If the question in the case at bar were to be determined entirely on technical grounds there might well be difference of opinion as to whether the fraud alleged was wholly "intrinsic." The petition alleged that the plaintiff, her attorney and a doctor entered into a conspiracy prior to the trial to secure a judgment against the defendant by means of false and fraudulent testimony. Such a conspiracy, if entered into, would certainly tend to prevent the defendant from having a fair trial. If such a conspiracy was entered into, unknown to the defendant, how can it be said that he should have been prepared to meet the testimony offered in consummation of the conspiracy? How would he controvert the testimony of the doctor

that he had treated the plaintiff for injuries received or that of the plaintiff that she was so treated by him.

Appellee contends that the petition to vacate was subject to demurrer because the alleged admissions of the plaintiff's attorney were made as part of the negotiations of a compromise settlement. It is well established, as contended by appellee, that offers of compromise settlement, made by one of the parties to an action, are not ordinarily admissible against him, but the petition here does not allege that the admissions were in any way a part of an offer to compromise. (22 C. J. 311, 312.)

Appellee also contends that the admissions of one alleged conspirator, made in the absence of the coconspirators, are inadmissible, and that when a conspiracy has been consummated the admission of one, in the absence of other conspirators, is a mere narrative of a past occurrence and can affect only the one who makes it. In the instant case admissions were alleged to have been made by the attorney for the plaintiff. Moreover, it must again be noted that the petition being here upon demurrer must be construed in the light most favorable to the petitioner; that conspiracy was not pleaded as a mere legal conclusion, but that the facts constituting the alleged conspiracy were set out with particularity. When conspiracy has been established admissions of one of the conspirators, even though made in the absence of the others, are ordinarily admissible. (*Hutson v. Imperial Royalties Co.*, 135 Kan. 718, 13 P. 2d 298.)

Whether, upon a hearing upon the petition, the petitioner could produce any testimony other than his own statements to substantiate the allegations, we may not conjecture. We are only concerned as to his right to be heard. True or false, the allegations made were sufficient to withstand demurrer. The demurrer should have been overruled and the petitioner given opportunity to produce any testimony he had to convince the court that the judgment should be vacated. Not only is the petitioner entitled to be heard, but those against whom the serious allegations are made are equally interested, in our opinion, in an opportunity to deny and disprove them. More than that, the maintenance of the high standing of the courts requires that all provisions for insuring integrity of judicial determinations be stoutly preserved.

The case is reversed, with instructions to overrule the demurrer.

ALLEN, J., concurs in the result only.