No. 38,955

WILLIAM PAUL LOWRY, *Appellee*, v. MILDRED D. LOWRY, *Appellant*.

(256 P. 2d 869)

Opinion filed May 9, 1953.

*L. M. Kagey,* of Wichita, argued the cause, and *Max L. Hamilton* and *Keith Eales*, both of Wichita, were with him on the briefs for the appellant.

*John E. Boyer* and *Harold T. Beck*, both of Wichita, argued the cause, and *Eli Eubanks, George J. Hondros, Paul J. Donaldson* and *Kenneth P. Stewart*, all of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by the plaintiff to vacate and set aside a judgment rendered against him in an action for separate maintenance brought by the defendant. In referring to the parties we shall not mention any initials or middle names.

The allegations of the petition to vacate and of other pleadings and the judgment therein refered to disclose that on May 1, 1951, Mildred Lowry commenced an action in the district court of Sedgwick county against her husband William Lowry in which, among other things, she alleged the parties had no children, had accumu-

lated no property other than personal effects and an automobile in which they had an $800 equity; that William Lowry earned $1,750 per month, and she prayed that she be granted separate maintenance, attorneys' fees and court costs. A summons was issued to the sheriff of Montgomery county, the return on which shows it was served by being left at defendant's usual place of residence. William Lowry entered a special appearance and moved that service on him be quashed for the reason he had not been served at his usual place of residence. On September 1, 1951, this motion was denied. On November 23, 1951, the cause was heard, William Lowry making no appearance. For present purposes it may be said that the Sedgwick county court made its order and judgment giving Mildred Lowry separate maintenance for herself from William Lowry, who was ordered to pay her $300 per month from December 1, 1951, for her maintenance and $2,100 "back support money" owing to her.

On May 21, 1952, William Lowry commenced the present proceeding by filing the petition now under attack. In his petition William Lowry alleged that on May 1, 1951, Mildred Lowry commenced an action against him alleging that he was a resident of Montgomery county, and after making allegations as to her misrepresenting his earnings and that he was a resident of the state of Oklahoma and not of Kansas, alleged further that by reason of such fraudulent representations, the decree in her favor was rendered in the district court of Sedgwick county. William Lowry further pleaded that on September 25, 1951, a decree of divorce was entered in the district court of Oklahoma County, Oklahoma, in an action by William Lowry against Mildred Lowry and that Mildred Lowry knew that said decree had been entered in the Oklahoma district court and that the orders of the Sedgwick county district court previously mentioned were obtained from said court by the false and fraudulent representations, statements and pretenses of Mildred Lowry, and by reason thereof the decree should be canceled, set aside and held for naught, and the prayer of the petition was in accord. To this petition Mildred Lowry demurred on the ground no cause of action was stated. On the hearing thereof the demurrer was overruled and Mildred Lowry perfected her appeal to this court.

In a summary way it may be said that appellant's contention the trial court erred in overruling her demurrer is twofold, one reason asserted being that the alleged fraud perpetrated by Mildred Lowry was intrinsic and not extrinsic, and being intrinsic William Lowry's

rights were concluded as he filed no motion for a new trial nor did he appeal from the judgment in the action brought by Mildred Lowry. The other reason is that the instant petition does not state a cause of action for the reason it fails to allege a valid defense to the action, instituted by Mildred Lowry. With respect to both contentions, it is observed that no motions to make definite and certain were directed against the petition, and under familiar rules its allegations are to be liberally construed.

In contending that the fraud alleged was intrinsic and not extrinsic, appellant directs our attention to *Putnam v. Putnam,* 126 Kan. 479, 268 Pac. 797, and to *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079. In the *Putnam* case it was said that,

"By extrinsic fraud is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy." (l. c. 483.)

It was held:

"A motion or petition to set aside or modify a judgment does not state facts sufficient to constitute a cause of action where it relies solely upon intrinsic fraud or where such fraud was used in connection with the issues involved and the determination reached by the court.

"Where fraud is alleged as a ground for setting aside or modifying a judgment, it must be extrinsic fraud or such as has prevented a fair submission of the controversy." (Syl. ¶¶ 4, 5.)

In the *Plaster Co.* case it was held:

"False swearing or perjury alone is not ground for vacating a judgment under the provisions of section 570 of the code of civil procedure. (Gen. Stat. 1901, § 5056.)

"The fraud which will authorize a court to vacate a judgment in an action brought for that purpose under section 570 of the code of civil procedure (now G. S. 1949, 60-3011) must be extrinsic or collateral to the matter involved in the former action, and sufficient to justify the conclusion that but for such fraud the result would have been different." (Syl. ¶¶ 1, 2.)

The question whether fraud complained of was extrinsic or intrinsic has been the subject of inquiry in many other cases.

In *Eaton v. Koontz,* 138 Kan. 267, 25 P. 2d 351, it was said:

"The court has distinguished between extrinsic fraud and intrinsic fraud occurring in the course of a proceeding. The distinction is sound, and is adhered to. Extrinsic fraud consists in preventing fair presentation of issues. Intrinsic fraud relates to fair determination of issues. (*Potts v. West,* 124 Kan. 815, 262 Pac. 569.) Some of the conduct displayed in the proceedings under consideration may be classified as extrinsic fraud, but it is not necessary to catalogue what was extrinsic and what was intrinsic. Practical application of the distinction is often difficult, and the court does not propose to become so involved in rules and distinctions and categories of its own making or recogni-

tion that it becomes impotent to deal in a forthright manner, when necessary, with that most persistent of all baleful practices, the practice of fraud." (1. c. 272.)

In *Shuckrow v. Maloney*, 148 Kan. 403, 410, 83 P. 2d 118, and *Laidler v. Peterson*, 150 Kan. 306, 312, 92 P. 2d 18, in each of which may be found a review of some of our decisions, the statement above quoted is repeated in approval. In *In re Estate of Koellen*, 167 Kan. 676, 208 P. 2d 595, to which reference is made for the facts, the question was whether the evidence disclosed extrinsic fraud, and it was said:

"Second, we think the evidence disclosed extrinsic fraud. Lampe's action in suppressing the document originally executed by Koellen and offering for probate the spurious, forged document had the effect of preventing a fair presentation of the issue, rather than a fair determination of it (*Eaton v. Koontz*, 138 Kan. 267, 25 P. 2d 351). And as bearing on correction of judgments for fraud perpetrated in obtaining them, see *Huls v. Gafford Lumber & Grain Co.*, 120 Kan. 209, 243 Pac. 306." (1. c. 682.)

Although under the above decisions it be said that the earnings of William Lowry was a subject of inquiry at the trial, and that any false testimony by Mildred Lowry with respect thereto constituted intrinsic fraud, the same cannot be said about her concealment of the fact that a decree of divorce had been entered in the Oklahoma court. Had the Sedgwick county district court been advised that Mildred Lowry was no longer the wife of William Lowry, it would have then been aware that it was without jurisdiction to grant her separate maintenance as it did. It is noted that the judgment obtained by Mildred Lowry is not within the purview of G. S. 1949, 60-1518, pertaining to proceedings for alimony following judgments for divorce in another state as provided by the statute.

In our opinion the concealment of the fact by Mildred Lowry that William Lowry had obtained a divorce from her prevented a fair submission of the action for separate maintenance and was extrinsic fraud.

Appellant's contention that the petition to vacate the judgment does not allege a valid defense cannot be sustained. The allegations are clear that the Oklahoma divorce had been obtained. The fact that the parties are not husband and wife is a good defense to her action in Kansas for separate maintenance.

The ruling and judgment of the trial court is affirmed.

Harvey, C. J., concurs in the result.