THE ELECTRIC PLASTER COMPANY, *Appellant*, v. BLUE RAPIDS CITY TOWNSHIP, *Appellee*.

No. 16,323.

SYLLABUS BY THE COURT.

1. VACATION OF JUDGMENT—*Perjury.* False swearing or perjury alone is not ground for vacating a judgment under the provisions of section 570 of the code of civil procedure. (Gen. Stat. 1901, § 5056.)

2. ——— *Fraud Must be Extrinsic or Collateral to the Issue Involved.* The fraud which will authorize a court to vacate a judgment in an action brought for that purpose under section 570 of the code of civil procedure must be extrinsic or collateral to the matter involved in the former action, and sufficient to justify the conclusion that but for such fraud the result would have been different.

3. ——— *Fraud—Petition Demurrable.* In an action to vacate a judgment for fraud of the successful party a petition fails to state a cause of action where it relies solely upon the

ground that the judgment was obtained upon false or perjured testimony and shows that the issue to which the alleged false testimony relates was raised by the pleadings and was tried out upon a conflict of testimony, the truth or falsity of which was necessarily determined in the former action.

4. ———— *Audita Querela—Code Remedy.* While the common-law writ of *audita querela* has become obsolete, the remedy still exists in a proper case, either by motion or petition, under sections 568 and 570 of the code of civil procedure. (Gen. Stat. 1901, §§ 5054, 5056.)

Appeal from Marshall district court; SAM KIMBLE, judge. Opinion filed February 12, 1910. Affirmed.

*W. S. Glass, H. A. Russell,* and *J. G. Strong,* for the appellant.

*E. A. Berry, W. J. Gregg,* and *J. D. Gregg,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant brought suit to annul a judgment rendered by the district court of Marshall county, on the ground that it was obtained by fraud. The trial court sustained a demurrer to the petition, and the only question is whether the petition states a cause of action.

The judgment was rendered in an action brought against the Electric Plaster Company by Blue Rapids City township to recover $229.60 upon a contract entered into between the township and the company, by which the company agreed to pay a certain proportion of the interest as the same should accrue on $15,000 of township bonds, issued for the purpose of paying for the reconstruction of a highway washed away by the flood of 1903. It was supposed by the parties to the contract that the reconstruction of the highway would restore to the plaster company its water power, of which it had been deprived by a change in the channel of Blue river. The company set up several defenses; among them, that the contract was void as against pub-

lic policy, that it lacked mutuality, and that the township had failed to restore the water power according to the contract. There was a judgment against the company, which on appeal this court affirmed. (*Plaster Co. v. Blue Rapids Township*, 77 Kan. 580.)

The appellee urges that the cause should be dismissed for the reason that the record discloses that since the suit was brought the appellant has satisfied the judgment complained of by payment of the same in full, with costs. Obviously, however, the main purpose of the suit was not to relieve the appellant from the payment of the comparatively small judgment involved, but to get rid of the binding force and effect of the judgment as a former adjudication, and to enable the appellant in the future to defend against claims for further payments of interest.

One ground of demurrer is that the action is in the nature of a proceeding *audita querela,* which is unknown to our practice. The action commonly known as *audita querela* takes its name from the common-law writ which formerly issued for the purpose of affording relief from the consequences of a judgment or execution where the matter of the defense arose subsequent to the rendition of the judgment or the issue of the execution, as in cases where the judgment had been released or the execution satisfied. (4 Cyc. 1060.) The name of the proceeding is of no importance. As a substitute for *audita querela* our practice affords the same remedy, either by motion or petition. (*McMillan v. Baker*, 20 Kan. 50, 53.) While the writ itself has become obsolete, the remedy still exists in a proper case. The prayer of the petition in this case is that the judgment be vacated and a new trial granted, and the action is brought under sections 568 and 570 of the code of civil procedure (Gen. Stat. 1901, §§ 5054, 5056), upon the grounds set forth in the fourth subdivision of section 568, which authorizes the district court to vacate or modify a judgment at or after the term "for fraud

practiced by the successful party in obtaining" it.  The question remains whether the petition states a cause of action.  Its only allegation respecting fraud is in the following language:

"That the results and consequences arising from the floods on the — day of July, A. D. 1907, demonstrated and proved beyond controversy or dispute that the testimony upon which the findings of the jury and of the court at the former trial were based was incompetent, false, fraudulent and untrue."

At the trial of the original action witnesses for the township testified to the character of the soil, the stability of the ground, the manner in which the work was done, and its probable permanency.  Others, who qualified to some extent as expert witnesses, testified that in their opinion the reconstruction of the highway would restore to the company its water power.  The principal controversy was whether the rebuilding of the roadway would have this effect and whether the work was reasonably permanent.  It was contended on the appeal that the testimony offered on behalf of the township upon these issues was incompetent, but this court held it competent. (*Plaster Co. v. Blue Rapids Township,* 77 Kan. 580.)

The whole theory upon which the appellant seeks to maintain this action will appear from the following quotation from the brief:

"Since the expiration of the periods within which the judgment in the former case could be opened up by motion or by petition as provided by statute, nature has revealed the false and fraudulent character of the testimony in support of the contention that a reasonably permanent roadway had been constructed by the township with the funds which were realized from the sale of the bond issue, and has revealed that the work of the township did not effect a restoration of said water power, and truthful nature has proclaimed that the judgment in the former case rests upon perjury."

The remedy is specifically invoked on the ground that "the verdict of the jury was procured by false and per-

jured testimony, the falsity of which has since been demonstrated by the operation of nature's laws," the facts upon which the judgment was based having "been discredited and proven untrue by an act of God."

The name of no witness is mentioned. Nor is any specific fact testified to by any witness alleged to be false or his testimony perjured. By inference from the pleadings, together with the knowledge we have of the issues and character of the evidence in the former case, it may be assumed that the testimony now claimed to have been perjured was opinion evidence, based upon the general experience of the witnesses and their knowledge of local conditions. It would not be difficult, therefore, to sustain the demurrer on the ground that in pleading fraud the facts, and not mere conclusions of the pleader, must be alleged. But we prefer to place our decision upon broader grounds.

The rule established by the weight of authority is that a court of equity will not set aside a judgment at law because it was founded on perjured testimony, where the matter was actually presented and considered in the judgment assailed. The leading case in this country is *United States v. Throckmorton*, 98 U. S. 61, where Mr. Justice Miller, speaking for the court, said:

"The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterward ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." (Page 68.)

The Throckmorton case was cited and followed in *Vance v. Burbank*, 101 U. S. 514, *Hilton v. Guyot*, 159 U. S. 113, and *United States v. Beebe*, 180 U. S. 343. The same doctrine is thoroughly established in the state courts. (*Greene v. Greene*, 68 Mass. 361; *Ross v. Wood et al.*, 70 N. Y. 8; *Friese v. Hummel*, 26 Ore. 145; *New York Central Railroad Company v. Harrold et al.*, 65

How. Pr. [N. Y.] 89; *Neun v. Blackstone B. & L. Ass'n,*
149 Mo. 74; *Railroad v. Mirrielees,* 182 Mo. 126; *Pico
v. Cohn,* 91 Cal. 129; *Steen v. March,* 132 Cal. 616;
*Camp v. Ward,* 69 Vt. 286; *Codde v. Mahiat,* 109 Mich.
186; *Tucker v. Stewart,* 121 Iowa, 714; *Graves v.
Graves,* 132 Iowa, 199.)

The general rule is that an act for which a court of
equity will set aside or annul a judgment between the
same parties, rendered by a court of competent juris-
diction, has relation to fraud extrinsic or collateral to
the matter tried by the first court, not to fraud in the
matter on which the judgment was rendered. (*Camp v.
Ward,* supra.) The cases on this question are collated
in a note to *Graves v. Graves,* supra, and *Bleakley v.
Barclay,* 75 Kan. 462, in 10 L. R. A., n. s., 230. By the
expression "extrinsic or collateral fraud" is meant
some act or conduct of the prevailing party which has
prevented a fair submission of the controversy. Among
these are the keeping of the defeated party away from
court by false promises of a compromise or fraudu-
lently keeping him in ignorance of the action. Another
instance is where an attorney without authority pre-
tends to represent a party and corruptly connives at
his defeat, or where an attorney has been regularly
employed and corruptly sells out his client's interest.
The fraud in such a case is extrinsic or collateral to the
question determined by the court. The reason for the
rule is that there must be an end to litigation, and
where a party has his day in court and knows what the
issues are he must be prepared to meet and expose per-
jury then and there. (*Pico v. Cohn,* 91 Cal. 129.)
Where the alleged perjury relates to a question upon
which there was a conflict, and it was necessary for the
court to determine the truth or falsity of the testimony,
the fraud is intrinsic and is concluded by the judgment,
unless there be a showing that the jurisdiction of the
court has been imposed upon or that by some fraudulent
act of the prevailing party the other has been deprived
of an opportunity for a fair trial.

Is the general rule in equity superseded by the provision of the code (Civ. Code, § 568; Gen. Stat. 1901, § 5054) which provides that a judgment may be vacated "for fraud practiced by the successful party in obtaining" it, and does the statute authorize the courts to vacate a judgment upon the mere showing that it was obtained by false swearing or perjured testimony? In *Laithe v. McDonald,* 12 Kan. 340, a decision of the district court vacating a judgment obtained by means of perjured testimony was affirmed. The defeated party and his counsel in that case were both absent when the judgment was rendered; the prevailing party was the sole witness, and gave perjured testimony. Some expressions used by way of argument in the opinion have caused the case to be cited by other courts and text-writers as placing this court in opposition to the current of authority, and as holding that the statute enlarges the general equitable rule; but the doctrine of the case must be limited to the peculiar facts upon which it was decided. False swearing and perjury may furnish grounds for vacating a judgment under section 570 where the defeated party, having exercised due diligence, has been prevented from exposing the perjury by some act of fraud of the other party.

In Iowa a similar statute caused some confusion in the earlier decisions there, in a few of which it was intimated that perjured testimony was sufficient ground of fraud under the statute for vacating a judgment. In the recent case of *Graves v. Graves,* 132 Iowa, 199, Mr. Justice Deemer, speaking for the court, used this language:

"While there are suggestions in argument in some of our cases which seem to indicate that false swearing may be ground for vacating a judgment (see *Heathcote v. Haskins,* 74 Iowa, 566; *Brown v. Byam,* 59 Iowa, 52), yet in neither case was the question squarely decided. In all other cases where new trials were granted there was some active fraud, omission, or concealment, some extrinsic or collateral acts not involv-

ing the merits of the case. (See cases above cited.) In *Tucker v. Stewart,* 121 Iowa, 714, we said that the rule announced by the supreme court of the United States in *U. S. v. Throckmorton,* 98 U. S. 61, is that uniformly followed in this state. This settles the matter for this jurisdiction, and we need only restate the doctrine, which is that false swearing or perjury alone is not ground for setting aside or vacating a judgment. But, if accompanied by any fraud extrinsic or collateral to the matter involved in the original case sufficient to justify the conclusion that but for such fraud the result would have been different, a new trial may be granted." (Page 205.)

Nebraska has a statutory provision the same as ours, and there the rule obtains that the intentional production of false testimony will in a proper case justify the annulment of a decree or judgment which is the product of such testimony. (*Munro v. Callahan,* 55 Neb. 75; *Secord v. Powers,* 61 Neb. 615.) But in the opinion in the latter case it was said that "it is not the policy of the law to encourage actions of this kind. There must be an end to litigation." (Page 617.) It was therefore held that where the defeated party has had an opportunity to meet such evidence with counterproof and has not availed himself of it he can not obtain a retrial by charging that the judgment was procured by perjury.

In Minnesota a statute provides (Gen. Stat. 1878, ch. 66, § 285) that "in all cases where judgment heretofore has been or hereafter may be obtained in any court of record by means of the perjury, subornation of perjury, or any fraudulent act, practice or representation of the prevailing party, an action may be brought by the party aggrieved to set aside said judgment, at any time within three years after the discovery" of the fraud. In *Hass v. Billings,* 42 Minn. 63, it was considered necessary to place some limitation on the broad language of the statute, and, in the opinion, the court said that when an issue is squarely made

in a case, so that each party knows what the other will attempt to prove, and neither has the right or is under any necessity to depend on the other proving the fact to be as he claims it, the mere allegation by the defeated party that there is as to such issue false or perjured testimony by the successful party or his witnesses will not bring his case within the meaning of the statute. The court also used this language:

"When will controversies between litigious parties be finally determined? If the statute permits controversies to be, in that manner, perpetually kept open, it certainly is a very mischievous one. We can not think that the legislature intended to go that length." (Page 67.)

Similar limitations have been placed upon the meaning of the statute in *Colby v. Colby,* 59 Minn. 432, *Watkins v. Landon,* 67 Minn. 136, and *Moudry v. Witzka,* 89 Minn. 300. In the last-named case it was held that the defeated party was not entitled to relief on the ground that the judgment was rendered on perjured testimony where he was apprised by the pleadings of the nature of the facts sought to be established by such testimony, and where he was not under the necessity of depending upon the person testifying for proof that the fact was as he claimed.

The rule is stated in volume 2 of the fourth edition of Freeman on Judgments, section 489, as follows:

"Whenever an issue exists in any action or proceeding, each of the parties should anticipate that his adversary will offer evidence to support his side of it, and should be prepared to meet such evidence with counterproofs. Where he has an opportunity to do this, and does not avail himself of it, or, though availing himself of it, is unable to overcome the effect upon the court or jury of the evidence offered by his adversary, he can not, in effect, obtain a retrial of the issue before another tribunal by charging that the judgment against him was procured by perjury; and this has been held to continue to be the rule, notwithstanding the existence of a statute authorizing actions to set

aside judgments obtained by means of perjury or subornation of perjury."

The present case falls within the principle noted. The controversy tried out and determined in the former action was whether the work of rebuilding the road was reasonably permanent and would restore the water power. The determination of this question was essential to the judgment, and the truth or falsity of the evidence relating to it was necessarily passed upon. The issue was squarely raised; in fact, the appellant raised it by its answer, and was aware of the character of evidence required to meet the issue. It can not be said that the appellant was under any necessity of depending upon the other party to supply the evidence. The appellant availed itself of the opportunity to offer, and did offer, counterproof to overcome that of its adversary, and it can not now be permitted to obtain a retrial of the issue by merely charging that the judgment was obtained by perjury. Otherwise there would be no end to the number of suits involving the same issue of fact. As was said by the court in *Pico v. Cohn*, 91 Cal. 129:

"Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is that a final judgment can not be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum*." (Page 134.)

It was never contended that the contract between the parties made the township an insurer of the permanency of the work, and the witnesses who testified that the reconstruction of the highway was reasonably permanent and would confine the waters of the Blue river to its channel and restore to the appellant its water power stated nothing more than their opinions, based upon their general experience, their knowledge of local conditions, and their acquaintance with

the character of the work. The destruction of the highway by a subsequent flood demonstrated that every witness who so testified was wrong in his opinion; but it fell far short of demonstrating that any witness testified falsely or committed perjury. The presumption is that the witnesses gave their honest opinions and were mistaken. That perjury was committed appears to be nothing more than a conclusion of the pleader from the fact that an event which afterward occurred has demonstrated that the opinions of the witnesses were incorrect. No such conclusion follows, as a matter of law or of fact. Aside from these defects, the petition fails to state a cause of action under section 570 of the civil code (Gen. Stat. 1901, § 5056) because it relies solely upon the claim that the judgment was obtained upon perjured testimony, without setting up any fraudulent act extrinsic or collateral to the matter involved sufficient to justify the conclusion that but for such extrinsic or collateral fraud the result would have been different; and because it appears from the petition that the controverted issue of fact was raised by the pleadings and tried out upon a conflict of testimony, the truth or falsity of which was necessarily determined in the former action.

The demurrer was rightly sustained, and the judgment is affirmed.