No. 36,715

VIRGINIA J. STAFFORD, *Appellee,* v. SAMUEL THOMAS STAFFORD, *Appellant.*

(181 P. 2d 491)

Ross McCORMICK, judge. Opinion filed June 7, 1947.

*John Jay Darrah* and *Arnold C. Todd,* both of Wichita, argued the cause, and *Dale Kidwell, Robert B. Morton* and *D. Emmett Foley,* all of Wichita, were with them on the briefs for the appellant.

*Manford Holly,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul B. Kitch* and *Dale M. Stucky,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a proceeding, filed pursuant to the provisions of G. S. 1935, 60-3007, *Fourth* et seq., to set aside a decree of divorce. The petitioner was the wife and defendant in the divorce action. An order was entered setting aside the divorce decree. The original plaintiff in the divorce action has appealed.

The briefs refer to the wife who filed the present petition to set aside the divorce decree as the plaintiff and the husband who is the appellant as the defendant. To avoid confusion the parties will be so referred to in this opinion.

Plaintiff's amended petition alleged the marriage of the plaintiff and defendant in 1939, their residence in New York and the removal of defendant to Wichita; that about January 15, 1945, defendant filed an action against the plaintiff in Sedgwick county for divorce and obtained a decree; that defendant for the purpose of obtaining plaintiff's consent to the decree, fraudulently represented to plaintiff that the action was instituted for the purpose of clearing up a violation of the New York law prohibiting his marriage to her under a divorce decree previously entered; that to lull plaintiff into security defendant cohabited with plaintiff during her stay in Wichita, with the result that she was led to believe that if she opposed him in the divorce case the apparently happy relationship then existing would be forever destroyed; that on the first day of the trial and at the close of defendant's evidence, the divorce case at the request of the wife's attorney was adjourned to give her an opportunity to be heard; that defendant instructed plaintiff to have prepared for his signature a petition for an order in the New York court authorizing their remarriage and plaintiff was induced to return to their home in New York; that by these acts plaintiff was lulled into security and induced to have no further counsel with her attorney and to introduce no evidence, with the result that on March 29, 1945, the decree of divorce was entered; that plaintiff was not informed as to the full purport of defendant's testimony at the trial until after the expiration of the term in which the decree was entered; that the allegations in the divorce petition were false in that defendant was not a resident of Kansas and that no valid ground for divorce in fact existed; that the testimony of defendant and his corroborating witness was false and any differences that existed between the opposing parties had been condoned by continued cohabi-

tation; that after the expiration of the time for an appeal and after the close of the term in which the decree was entered defendant informed plaintiff that it had always been his intention to let the decree stand and he had made his representations solely for the purpose of obtaining a decree; that on account of these things plaintiff had been deprived of substantial property rights and the decree should be set aside.

After defendant's demurrer to the petition was overruled he answered the plaintiff had come to Wichita for the purpose of having a reconciliation; that when she discovered she could not do so she asked that the hearing on the divorce be taken up while she was present; that it was taken up on March 27 while she was in the courtroom and that at the completion of defendant's evidence the court stopped the trial and instructed the reporter to let the record show that the present plainiff was in the courtroom; that counsel conferred with her and requested the court to continue the trial until March 29 to give her a chance to decide whether or not she wished to contest it; that shortly before two o'clock on March 29, counsel for plaintiff advised counsel for defendant that she did not desire to contest the action and stated that he would approve the journal entry of divorce; that in response to this action the court did render judgment for divorce in favor of defendant here according to the terms of the journal entry; that on March 27 before the judgment of the court was rendered Mrs. Stafford advised counsel for defendant that his client claimed that defendant was going to remarry her after the divorce had been granted; that defendant thereupon advised counsel for plaintiff that he did not intend to remarry plaintiff and that plaintiff was advised to that effect; that the facts of which plaintiff complained should have been presented to the court or to her attorney during the pendency of the action; that the allegations amounted to an agreement to suppress evidence, which constituted collusion; that plaintiff had accepted the money awarded to her under the decree and was, therefore, estopped from contesting its validity.

The trial court in this proceeding found generally for the plaintiff and against the defendant and that the judgment should be set aside because of extrinsic fraud practiced by the defendant, as shown generally by the evidence. The court also made somewhat extended remarks in the record at the time of announcing its decision. In these remarks the court said, amongst other things:

"The fact that after the continuance on the 27th for two days, to the 29th, hating her, as you say 'wouldn't sleep in the same bed with her, wouldn't touch her with a 10-foot pole' how obnoxious plaintiff was, yet, right in the face of it he takes her on the 29th to Hutchinson. What does that mean, Mr. Holly? He got her away from you, away from Wichita and away from the defense by a ruse . . .

"Now, that getting her out of the town, out of touch with her attorney, in my judgment, constitutes extrinsic fraud on the Court and on the defendant. Unsuspecting as she was, she was glad to go on the ride to Hutchinson for the purpose of the advantage of pressing her claims for reconciliation, and that was her whole object, as she has testified and, it accomplished the result of leaving the Court without any defensive evidence."

The defendant filed a motion for a new trial on the ground that the judgment was contrary to the evidence and contrary to law; that the court erred in overruling the demurrer to plaintiff's first amended petition and in overruling defendant's demurrer to plaintiff's evidence and in overruling defendant's motion for judgment on plaintiff's opening statement; that the court erred in rendering judgment for the plaintiff because the evidence showed that the plaintiff had every opportunity to defend the action; that she was represented by counsel of her own choosing; that there was no fraud of any kind practiced upon plaintiff by defendant; that the action complained of by the plaintiff did not constitute actionable fraud; that collusion was inherent in plaintiff's actions; that a collusive agreement was made between plaintiff and defendant to suppress evidence; that no coercion or duress was practiced upon the plaintiff, which would warrant vacation of the divorce decree; that the judgment was rendered under influence of passion and prejudice; that the rulings of the court were erroneous; that there was misconduct of the plaintiff, the prevailing party. This motion was overruled.

The defendant's specifications of error are that the district court erred in overruling defendant's demurrer to plaintiff's amended petition; in overruling the defendant's motion for judgment on the plaintiff's opening statement; in overruling defendant's demurrer to the evidence at the close of plaintiff's testimony; in rendering judgment for the plaintiff upon the evidence presented, and in overruling defendant's motion for a new trial.

Defendant first argues that his acts did not constitute extrinsic fraud, for which plaintiff was entitled to have the decree vacated. The proceeding was brought pursuant to G. S. 1935, 60-3007, *Fourth,* which provides, in part, as follows:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made: . . . Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order."

All parties concede that the fraud to which reference is made in the above section is extrinsic fraud as distinguished from intrinsic. (See *Blair v. Blair*, 96 Kan. 757, 153 Pac. 544; also *Plaster Co. v. Blue Rapids Township*, 81 Kan. 730, 106 Pac. 1079.) On this question we note there is a conflict at some points between the testimony of the plaintiff and that of the defendant. We cannot weigh evidence here, however. We must on consideration of the demurrer of the defendant to plaintiff's evidence take her testimony as true and draw all reasonable inferences from it tending to support the judgment. (See *Jones v. McCullough*, 148 Kan. 561, 83 P. 2d 669.)

This sends us to a consideration of the testimony of plaintiff as to the fraud practiced upon her and the court by defendant. The trial court found that the extrinsic fraud practiced by defendant was his taking plaintiff to Hutchinson on March 29, 1945, and thus preventing her from being in the courtroom on that date when final disposition was to be made of the divorce action. The court also made a general finding in favor of the plaintiff and against the defendant. Such a finding found all the controverted issues of fact against the defendant and in favor of the plaintiff. (See *Bancroft v. Chambers*, 10 Kan. 364; also *Lenox Hall v. Seelye*, 107 Kan. 14, 190 Pac. 737.)

Plaintiff testified that when she first came to Wichita defendant told her he was getting the divorce to clear up something that had been pressing on his mind because he had married her at a time when the decree of a New York court divorcing him from a former wife had forbade him remarrying without that court's permission. She testified that he promised her that if she did not contest the divorce action "we would go on together." In connection with this testimony she also testified that her New York attorney in a letter told her this statement of defendant was "plain ordinary malarky" and that her Wichita attorney told her when she directed him to appear in court at the hearing of the divorce action but not to resist the petition for a divorce, that unless she filed a pleading or otherwise resisted the action, a judgment would be entered against her, from which she would have difficulty from being relieved.

She also testified, in part, as follows:

"The reason I did not contest the divorce case was because Mr. Stafford told me our whole happiness depended on clearing up this mental worry, that it prayed on his mind, and that is why he did not support me, he did not feel we were properly married.

"I heard part of the plaintiff's testimony in the divorce suit. I heard it when I came into the court room. Mr. Stafford had insisted that I be in the court room and listen to the testimony. Mr. Stafford told me he wanted me to be in the court room and not defend myself; that was also part of the deal. We had no agreement but I had to let him have his divorce so that he would wipe out this awful thing that was bothering him."

This takes us up to the day the divorce case was set for hearing when plaintiff testified she requested her Wichita lawyer to be present in the courtroom and keep her advised. It was then the lawyer handed her the letter setting forth her rights and the consequences which were apt to follow if counsel followed her instructions.

The trial was commenced on March 27, 1945, with the plaintiff and her attorney in the courtroom but making no formal appearance.

She testified in this case, "I was in the court room and heard some of the testimony in the divorce action." She testified further: "After all the evidence was in, I conferred with Mr. Holly (her Wichita lawyer). The matter was continued until March 29, 1945." She testified further that defendant came to her room that night and told her she should not have appeared at all; that the adjournment "had stopped our future beginning" and made her promise that she would not do anything more about the divorce; that later that evening he returned and said, "This is the beginning of our new life together"; that they had dinner together in her room; spent the night there together and had sexual intercourse. She further testified that on the evening of March 28 at the insistence of defendant she called her Wichita attorney and said to him: "There is nothing further I can do if we are to go on together"; that they spent most of the day and that night in the same room; on March 29, 1945, she went with defendant to Hutchinson, leaving Wichita about 7:30 a. m. and returning about 3:30 p. m.; that defendant told her "the divorce would not be entered, we will go out of town together." She testified further:

"I did not enter into an agreement not to contest the divorce action. Mr. Stafford's actions indicated that he loved me and he treated me like a wife all of the time. He told me everything was going to be all right. . . . He wasn't to let the divorce go through. He told me 'the divorce wouldn't be entered, we will go out of town together.'"

She further testified that after they returned to Wichita defendant had prepared and signed an affidavit authorizing bearer to examine the files in the New York divorce case; that she remained in Wichita with defendant until April 3, 1945, when he urged her to return to New York as quickly as possible "so our new life would begin right"; that she was advised by both her New York and her Wichita attorneys to contest the divorce case, but disregarded their advice and did not contest it because "I loved and trusted the defendant and our life together meant more than anything else." She further testified:

"Mr. Holly told me that I ought to contest the divorce and defend myself. The reason I did not contest it was to clear up the Defendant's mental worry. I had to let him have this so that he would wipe out this awful thing that was bothering him. . . .

" 'Q. You wanted to do this and he would remarry you after that? A. Yes, definitely,' but also testified that the Defendant 'was not to let the divorce go through,' and that she did not know the divorce was granted until she returned to New York."

On the foregoing testimony the trial court found the issues generally in favor of the plaintiff and held specifically that the action of defendant in taking plaintiff to Hutchinson with him on the day on which the divorce case was to come up for final hearing, thus preventing her from being present to contest the case, constituted extrinsic fraud. If we are to believe her, which on consideration of an appeal from an order overruling a demurrer to the evidence we are bound to do, we must assume defendant told plaintiff the case would not be brought up that day; that no divorce would be granted and that he thus caused her to leave town with him. This is rather inconsistent with what she told her lawyer and with her testimony that she wanted to let him have the divorce so he could have his mind at ease and could remarry her. We must, however, give her the benefit of all reasonable presumptions and inferences. Did such conduct constitute extrinsic fraud? In *Shuckrow v. Maloney,* 148 Kan. 403, 83 P. 2d 118, this court considered the question of the distinction between extrinsic and intrinsic fraud. There we quoted with approval two illustrations from the Restatements on Restituton. We said:

"In the American Law Institute's recent text on Restitution are simple illustrations of cases of intrinsic and extrinsic fraud where an independent lawsuit may and may not be maintained, viz.:

" 'A obtains judgment against B by false testimony at the trial. B pays the

judgment. On discovery of the facts, B brings an action at law against A for restitution. He is not entitled to restitution.' (Sec. 72, p. 294.)

"A plain case of intrinsic fraud.

"'A is sued by B, who kidnaps A's witnesses and causes A to believe that they are dead. As a result of their failure to testify, B obtains judgment, of which A pays one-half. Discovering the facts, A brings a separate suit in equity seeking to have the enforcement of the judgment enjoined and asking for restitution of the part already paid. A is entitled to this relief.' (Sec. 72, p. 296.)

"A plain case of extrinsic fraud." (p. 409.)

In *Putnam v. Putnam,* 126 Kan. 479, 268 Pac. 797, we considered the evidence offered on a proceeding to vacate a divorce decree. We held that the particular fraud established in that case was intrinsic. We said further, however:

"There was no attempt made to keep the plaintiff away from the trial or to induce her not to ask for her share of the property accumulated by both of them together, or designedly to avoid getting legal service or give legal notice or any of the many fraudulent tricks to prevent her from having a fair trail. These would be extrinsic." (p. 483.)

In *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079, we held that the fraud proved was intrinsic. We said, however:

"By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promises of a compromise or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such a case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation, and where a party has his day in court and knows what the issues are he must be prepared to meet and expose perjury then and there. (*Pico v. Cohn,* 91 Cal. 129.)" (p. 735.)

The foregoing statements are in point here. But for the fraud practiced by defendant in informing plaintiff that the divorce decree would not be entered plaintiff would have been in court on March 29th and presented her evidence. Defendant took certain action to prevent her from doing so, that action constituted extrinsic fraud, and was sufficient to warrant the trial court in vacating the decree. Defendant's entire course of conduct shows a plan on his part to prevent the plaintiff by one means or another from presenting her side of the controversy to the court.

Defendant directs our attention to G. S. 1935, 60-3011. That section provides:

"The proceedings to vacate or modify the judgment or order on the grounds mentioned in subdivisions four, five, six, seven, eight and nine of section 596 (60-3007) shall be by petition verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On such petition a summons shall issue and be served as in the commencement of an action."

He also stresses the provisions of G. S. 1935, 60-3013. That section provides as follows:

"A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action on which the judgment is rendered; or if the plaintiff seeks its vacation, that there is a valid cause of action; and where a judgment is modified, all liens and securities obtained under it shall be preserved to the modified judgment."

Defendant then directs attention to the fact that this action was instituted by plaintiff pursuant to G. S. 1935, 60-3007, *Fourth*. That section has already been set out in this opinion.

He argues that the trial court erred in failing to sustain his demurrer to plaintiff's petition and evidence because she failed to state in her petition and to prove in her evidence that she had a defense to the defendant's divorce action.

This argument overlooks the fact that plaintiff in her petition alleged that defendant obtained his divorce decree by "false allegations" and "perjured" testimony, and that the allegations of the divorce petition, which was attached to the petition in this case, "were false and untrue in that defendant was not a resident of Kansas and in that no valid ground for divorce existed. That the testimony of defendant and of his corroborating witnesses at said trial as to residence and as to existing grounds for divorce was false and untrue. That all alleged differences testified to had been subsequently condoned by continued cohabitation as between said parties hereto."

Defendant in his divorce petition had alleged residence in Kansas for a year, as he was obliged to do in order to confer jurisdiction on a Kansas court. (See G. S. 1935, 60-1502.) He had also charged plaintiff with gross neglect of duty and abandonment for a year, either one of which was grounds for a divorce. (See G. S. 1945 Supp., 60-1501.)

Plaintiff's petition in this proceeding in alleging the falsity of the allegations of the divorce petition as to residence and as to the grounds for a divorce stated· two distinct defenses to the divorce

action. Furthermore, her allegation that any differences between them had been condoned stated another distinct defense. (See *Lassen v. Lassen*, 134 Kan. 436, 7 P. 2d 120.) We will not repeat the testimony of plaintiff which has already been set out here rather fully. Suffice it to say there was substantial evidence in the record upon which the trial court was warranted in finding for plaintiff on all the foregoing. That is, that defendant had not been an actual bona fide resident of Kansas for a year before instituting the divorce action; that plaintiff had not been guilty of gross neglect of duty or of abandonment and all the acts of plaintiff charged had been condoned. The trial court so found on conflicting evidence. We cannot disturb that finding on appeal. In *Spottsville v. Cement Co.*, 94 Kan. 258, 146 Pac. 356, the trial court set aside a judgment, and on appeal an argument was made which was similar to the one which we are now considering. We said:

"It is contended that the court had no jurisdiction to set aside the judgment first rendered after it had been paid, and that the motion did not come within sections 596 and 602 of the civil code which preclude the setting aside of a judgment until it is adjudicated that there is a valid cause of action, but the record shows that the court found upon argument and consideration that the motion ought to be sustained, which implies an adjudication that there was a valid cause of action." (p. 260.)

This is but another way of stating what has already been said in this opinion.

Defendant argues that the trial court erred in failing to find that the plaintiff was guilty of collusion with defendant in the trial of the divorce action and that such collusion was a fraud on the court, and, therefore, she was not entitled to any relief. We fail to find any evidence of collusion. At the most any evidence of collusion was weighed by the trial court and the doubts resolved in favor of plaintiff.

The judgment of the trial court is affirmed.

HOCH, J., not participating.