No. 38,021

FRED PRIDEAUX, *Appellee*, v. VIOLET PRIDEAUX, *Appellant*.

(220 P. 2d 538)

Opinion filed July 8, 1950.

*L. M. Kagey*, of Wichita, argued the cause, and *C. A. P. Falconer*, and *Robert J. Lewis*, both of Atwood, and *Max L. Hamilton*, of Wichita, were with him on the briefs for the appellant.

*Lloyd H. Vieux*, of Atwood, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was a divorce action. The appeal is from an order of the court sustaining plaintiff's demurrer to defendant's petition to set aside a decree of divorce, previously rendered, upon the ground that it had been obtained by fraud. The petition was filed under the applicable provisions of G. S. 1935, 60-3007 to 60-3011. The trial court sustained the demurrer for the stated reason "that extrinsic fraud was not pleaded."

From the record it appears the parties were married in January, 1925, in Rawlins county, and continued to live there until this action was brought, October 18, 1948; that by their joint efforts they accumulated a substantial amount of property; that five children were born to them; that the two oldest daughters are married and have homes of their own, and that the three sons, Robert, 18 years of age; Jack, 16, and Duane, 12, were living at home at the time the divorce suit was brought; that on October 18, 1948, plaintiff induced defendant to execute an entry of appearance in which she waived time to plead and consented that the action be tried at any time without further notice to her, and on the same day he induced her to execute a stipulation settling property rights, in which defendant was to receive $2,000 as her share and that plaintiff was to receive all of the other property, including their home in town and

560 acres of real estate owned by the parties; that he was to have the custody of the three minor children and should not be ordered to pay the attorney for defendant.

On December 30, 1948, defendant filed an answer and cross petition in which she alleged that at all times mentioned in plaintiff's petition she was a resident in good faith of Rawlins county, "but that she is now temporarily residing at 2004 Fairview Avenue, Wichita"; admitted she and plaintiff were married in January, 1925, in Rawlins county; that there were born to the marriage five children, as set out in plaintiff's petition; and that the property which plaintiff described in the petition was jointly owned by the parties at the time of the filing of the petition for divorce. It further alleged that plaintiff owned other property, the exact nature of which defendant is unable to state for the reason that she was but sixteen years of age when she married plaintiff and had no business experience, and her whole life had been taken up with the rearing of the children and in carrying out her duties as the wife of plaintiff. It denied the allegations in plaintiff's petition against her for divorce, denied that plaintiff is entitled to a divorce, and alleged that she had performed each and every duty devolving upon her as the wife of plaintiff, but that plaintiff, disregarding his duties and marriage vows, had been guilty of extreme cruelty and gross neglect of duty toward defendant, and that defendant is entitled to a divorce. It further denied that plaintiff is a fit and proper person to have the custody of the minor children and alleged that the custody should be awarded to her. It was further alleged that at the time she executed the stipulation settling property rights, and for many years prior thereto, she has been in fear of bodily harm at the hands of plaintiff; that she has been sick and unable to comprehend her rights in regard to property and was in fear of her life and was afraid plaintiff would inflict bodily harm upon her if she failed to sign the same, and that she was mentally ill and disturbed and unable fully to comprehend the nature and results of her action; that she had no independent advice, and that plaintiff represented to her that he was transferring the remainder of his property to their children and that if she did not sign the stipulation the children would lose their rights to the property; that immediately following the execution of the stipulation she was confined to a hospital in Wichita; that she was without funds and believed that although she agreed to take $2,000 her husband would at least provide her with additional funds

in order that she might pay her necessary and immediate expenses; alleged that the stipulation was inequitable; that at the time of their marriage they had no property, and that all of the property had been accumulated by the joint efforts of the parties; that the business transactions, the value of the property, income and earnings of plaintiff had been kept from her by plaintiff and that she does not fully know and understand the amounts and value of their various properties. The prayer was that plaintiff be denied a divorce, that defendant be granted a divorce from plaintiff; that the stipulation be set aside; that she be granted such temporary alimony, support money and attorneys' fees as the court deemed proper, and upon the granting of the divorce she be awarded a fair and equitable division of the property; that she be awarded the custody of the minor children and such support money as may be necessary for their support until they become of age.

To defendant's cross petition plaintiff filed an answer which contained a general denial and alleged that the "stipulation of settlement is fair, just and reasonable and was knowingly and understandingly entered into by the defendant," and prayed for judgment in harmony with the petition.

On February 18, 1949, defendant filed a motion for temporary alimony which, upon a hearing, it was orally agreed between the parties that the court order plaintiff to pay into court $50 per month for the benefit of defendant pending the further order of the court.

Under date of April 6, 1949 (signed by defendant on April 9 and by plaintiff on April 12), the parties entered into another stipulation by which it was agreed that the stipulation of October 27, 1948, be set aside, be withdrawn from the files and stricken from the record if the same had been recorded; that defendant retain the $100 paid as temporary alimony; that she be awarded as her separate property her interest in the estate of her deceased father free of all claims of plaintiff, and also receive her clothing and personal effects and a set of silverware she received as a gift from plaintiff and her children, and that she be paid $3,300 in cash by plaintiff to the clerk of the court; that defendant pay her own attorneys' fee and any indebtedness she may have incurred personally after October 18, 1948, and that plaintiff be awarded all of the other property of the parties, describing the 560 acres of land, the lots in town which constituted their home, an automobile, two trucks, three tractors, a combine and other farm machinery and equipment, 20 yearling steers, 11 calves, 8 milk cows, 4 stock cows, 1 bull, 2 brood sows, about 1,500 bushels of

wheat, all growing wheat, and household furniture and equipment; that plaintiff pay a balance of $3,500 of a mortgage indebtedness on some of the land, $8,100 owed to the Peoples State Bank of Mc-Donald, and any other indebtedness owed by the parties in Rawlins county. It further provided that plaintiff should have the custody of the three sons, with the right of defendant to visit them.

On April 13, 1949, the case came on for trial by plaintiff appearing in person and by his attorney and the defendant appearing by her attorneys. The defendant asked and was permitted to withdraw her cross petition. The court set aside the stipulation between the parties dated October 18, 1948, and canceled the same from the record, and the court rendered judgment upon the stipulation of April 6, 1949, executed by the parties on April 9 and April 12, 1949.

On October 6, 1949, defendant filed a petition to set aside the judgment and decree of the court of April 13, 1949, and for further appropriate relief. In this she alleged the prior proceedings in the case, as hereinbefore set out, listed the property set off to plaintiff by the decree and stated the value thereof to be in excess of $56,000, with an indebtedness of not to exceed $7,500, and further alleged:

"Defendant alleges that after the filing of her Answer and Cross-Petition and the Reply of the plaintiff to the Answer and Cross-Petition, plaintiff came to defendant at Wichita, Kansas, and told defendant that he would pay her in addition to the $2000.00 as provided in the first stipulation, an additional $2000.00, and execute a deed to all the real estate after he was adjudged to be the owner, to the children, if said defendant would permit him to get a divorce and enter into a new stipulation. Plaintiff further told the defendant not to say anything to her attorneys about the matter, because they would demand additional fees and whatever fees they got would be taken out of the money and property which plaintiff and defendant had accumulated and away from what property their children would get.

"Defendant alleges that she was solicitous of the welfare of her children and relied upon the statements of the plaintiff and at his solicitation and request signed a new stipulation, which said stipulation was the second stipulation filed herein shortly prior to the date of the divorce. Defendant did not advise her attorneys as to why she was signing the second stipulation and, in fact, refused to tell them because she did rely upon the statements made by the plaintiff at the time of the signing of the stipulation. Defendant alleges that said statements made by the plaintiff to the defendant, as aforesaid, were false and fraudulent and were made for the express purpose of cheating and defrauding this defendant out of her fair and equitable share of the property which they had accumulated in the 24 years of their married life, and after the divorce was granted and when defendant went to plaintiff and defendant's home in McDonald, Kansas, plaintiff told defendant in the presence of Robert, their son, that he never intended to deed the real estate to the children and never intended to give her the additional $2000.00.

"Defendant alleges that prior to the time of the signing of the first stipulation, on or about October 27, 1948, defendant was ill and mentally disturbed and was unable to fully comprehend the nature and results of said first stipulation and was afraid that plaintiff would inflict bodily harm upon her if she refused to sign and execute said stipulation, and in addition thereto, plaintiff promised defendant that he would deed the farms to the children, sell the house and car and divide the cash received from the sale, and at the same time also stated that he had no cash. Shortly thereafter, plaintiff wrote a letter to a third person setting out how much money he had, and by reason thereof, plaintiff then filed her Answer and Cross-Petition. Later, in the latter part of March, 1949, plaintiff again came to the home of the defendant in Wichita, Kansas, and again told her that he would give her an additional $2000.00 and deed the farms to the children if she would sign the second stipulation hereinbefore referred to and filed April 12, 1949, and approved by this Court April 13, 1949. At the time of the signing of both stipulations, defendant was in poor physical and mental health and she relied upon the statements, representations and promises which plaintiff made to her; that said statements, representations and promises were false and fraudulent and were known by the plaintiff to be false and fraudulent at the time he made them and said statements, representations, promises and threats were made for the purpose of coercing and inducing defendant to acquiesce in the signing of the stipulation and consenting to the divorce; and defendant would not have signed either stipulation nor withdrawn her Answer and Cross-Petition and permitted plaintiff to obtain an uncontested, default divorce had she known such statements, representations and promises were false and fraudulent, as aforesaid, and had she not been in fear of great bodily harm by the plaintiff.

"Defendant alleges that the stipulation settling property rights is grossly inequitable, unjust and unfair; that defendant has no business education, is in poor health and unable to earn a livelihood and that said stipulation settling property rights and the judgment of this court entered on the 13th day of April, 1949, approving said stipulation should be set aside and held for naught and an equitable division of property that is fair to both plaintiff and defendant should be made.

"Defendant further states that she had an absolute defense to the petition of the plaintiff and had and has a cause of action against the plaintiff upon the Cross-Petition for a divorce on the grounds of extreme cruelty and gross neglect of duty. That by reason of G. S. 60-1519, a detailed statement of the facts constituting her grounds for divorce and for custody of the minor children is not set out. That plaintiff is not a proper person to have the custody of the minor children and defendant is a proper person to have custody of the minor children.

"Defendant alleges that she has received the approximate net sum of $2777.00 by virtue of the stipulations which she has signed and approximately $523.00 has been deducted from the sum apparently so paid by the plaintiff, for attorneys' fees. That defendant has had no money to support herself except the sums so paid and by virtue thereof she is unable to tender all of said sums into court but desires to make a tender by requesting this court to take

into consideration such sums so paid in making an equitable division of the property accumulated by plaintiff and defendant."

By an amendment to the petition she alleged that plaintiff has never paid her the additional $2,000 and has never deeded to the children of the parties the real estate owned by plaintiff and defendant at the time the divorce was filed.

This petition was predicated upon G. S. 1935, 60-3007, the pertinent portions of which read:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made.

. . .

"*Fourth,* for fraud, practiced by the successful party, in obtaining the judgment or order."

It was brought within the time limited by G. S. 1935, 60-3008, and the procedure required by G. S. 1935, 60-3011 was followed.

On November 3, 1949, plaintiff filed a demurrer to this petition upon the ground that it did not state facts sufficient to constitute a cause of action against the plaintiff and in favor of defendant and did not state facts sufficient to justify the setting aside of the judgment rendered on April 13, 1949. This demurrer was heard by the court on December 15, 1949, and taken under advisement, with briefs to be submitted. On January 20, 1950, the court made an order sustaining the demurrer for the reason that extrinsic fraud had not been pleaded. From this order the defendant has appealed.

In discussing intrinsic and extrinsic fraud it is said, in 31 Am. Jur. 231:

". . . fraud has been regarded as extrinsic or collateral, within the meaning of the rule here under consideration, where it is one the effect of which prevents a party from having a trial or from presenting all of his case to the court, or where it operates upon matters pertaining, not to the judgment itself, but to the manner in which it is procured, so that there is not a fair submission of the controversy. Fraud which induces an adversary to withdraw his defense, or prevents him from presenting an available defense or cause of action in the action in which the judgment is obtained, has been regarded as a proper ground for equitable relief against the judgment."

In 49 C. J. S., p. 486, it is said:

"The fact that a judgment was obtained through fraud or collusion is universally held to constitute a sufficient reason for opening or vacating such judgment either during or after the term at which it was rendered."

On page 487 it is said:

". . . the authority to set aside judgments for fraud after the term usually is limited to cases where the fraud complained of was practiced in the very

act of obtaining the judgment, and all cases of fraud which might have been used as a defense to defeat the action are excluded; the fraud must be extrinsic and collateral to the matter tried, and not a matter which was actually or potentially in issue in the action, unless the interposition of such defense was prevented by fraud, accident, or the act of the opposite party without fault or blame on his own part."

To the same effect is 34 C. J. 278.

It may be noted that our statute (G. S. 1935, 60-3007, *Fourth*) does not distinguish between intrinsic and extrinsic fraud. In our earlier cases the distinction was not made, and perjury, particularly if accompanied by other fraudulent acts, was considered by the court as sufficient to justify the setting aside of a judgment for fraud. (See *Adams, et al., v. Secor,* 6 Kan. 542; *Laithe v. McDonald,* 12 Kan. 340; *McIntosh v. Comm'rs of Crawford Co.,* 13 Kan. 171, and *Haverty v. Haverty,* 35 Kan. 438, 11 Pac. 364.) Perhaps we began to make the distinction in *Bleakley v. Barclay,* 75 Kan. 462, 89 Pac. 906, where it was held that judgment could not be set aside "in a collateral proceeding" upon the ground that it was obtained by perjured testimony. This was followed in *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079, where it was held that perjury alone is not ground for vacating a judgment under the statute; that fraud must be extrinsic or collateral to the issue involved. On page 735 this language is used:

"By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promises of a compromise or fraudulently keeping him in ignorance of the action."

Other examples are given, not with the view of having a complete list of situations. The above case is cited in *Putnam v. Putnam,* 126 Kan. 479, 483, 268 Pac. 797, and the court said:

"The distinction between intrinsic and extrinsic fraud is well defined in the opinion in the case last cited. By extrinsic fraud is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. But fraud is intrinsic and included in the judgment where it relates to questions that were in conflict and which were necessary for the court to determine."

This was a divorce case in which the application to set aside the judgment was filed nine years after the judgment was rendered, and the court held it was too late under G. S. 1935, 60-3007 to 60-3013. In that case the court had denied the divorce, "but divided the

property after hearing evidence as to its existence, extent and value."

The case of *Stafford v. Stafford*, 163 Kan. 162, 181 P. 2d 491, presented some of the elements present here. There the husband got the wife away from her attorney, made false representations to her and kept her from giving her evidence in court. The opinion cites many of our former cases and other authorities. The trial court had sustained the petition to set aside the decree and it was affirmed.

Counsel for appellee cites the case of *Marks v. Marks*, 163 Kan. 454, 182 P. 2d 885, and argues that the appellant participated in the fraud. The contention lacks merit. In this case the appellant did not really learn of the fraud until after the decree of divorce had been entered, hence could not have participated in it. Appellee argues that appellant should not have been so credulous as to rely upon the statements she alleges her husband made to her, citing on that point *Huls v. Gafford Lumber & Grain Co.*, 120 Kan. 209, 243 Pac. 306. We think this point lacks merit. When a husband uses the weapon of deceit to take advantage of his wife, with whom he has lived for nearly twenty-four years, who had borne him five children, and who was in ill health, he is not in a good position to contend that she should not have relied upon him.

Appellant by her cross petition had pleaded a good defense to appellee's suit for divorce. In the stipulations which appellee induced her to execute he gave her but a small fraction of the amount she normally would be entitled to in a division of the property between them in a divorce action.

Appellant's petition to set aside the divorce decree stated extrinsic fraud under the authorities hereinbefore cited. Appellee complains of the reply brief filed by appellant in this court and contends it contains matter not shown by the record. A part of this reply brief was appropriate. It does contain some matters not in the record and these have been disregarded.

The judgment of the trial court should be reversed with directions to overrule the demurrer, to hear the evidence upon plaintiff's allegations of fraud, and if they are sustained to set aside the decree of divorce, reinstate her answer and cross-petition to plaintiff's action, and hear the case on its merits.

It is so ordered.