No. 39,701

J. A. CUNNINGHAM, *Appellant,* v. MABEL CUNNINGHAM, *Appellee.*

(283 P. 2d 405)

Opinion filed May 7, 1955.

*James W. Wallace,* of Scott City, argued the cause and *D. B. Lang,* of Scott City, and *Max Jones,* of Goodland, were with him on the briefs for the appellant.

*Corwin C. Spencer,* of Oakley argued the cause and *W. H. Clark, Marion W. Chipman* and *Kenneth Clark,* all of Hill City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is a proceedings begun by the defendant to vacate a judgment wherein a divorce was granted plaintiff and a contract dividing property was approved. The judgment was set aside as to the property division. The plaintiff in the original action has appealed.

The pleadings in the divorce case will be noticed at the outset. The petition alleged the marriage and the birth of two children, both of age, when the action was begun; that the parties had made an oral contract for the division of property; that defendant had been guilty of extreme cruelty and gross· neglect of duty and abandonment. The prayer was for a divorce and that the property settlement be approved.

The defendant's answer denied generally but admitted the marriage and the birth of the children. She alleged the troubles of plaintiff and defendant had been brought about by the misconduct, extreme cruelty and gross neglect of duty of plaintiff; stated that the property owned by them had been accumulated by their joint efforts.

She denied the making of the oral contract and alleged that cer-

tain lots in the city of Oakley were purchased with money inherited by her.

For her cross petition defendant alleged that plaintiff deserted her in 1945; that she had performed her duties as a wife but plaintiff was guilty of extreme cruelty, gross neglect of duty, abandonment and nonsupport. The cross petition then stated that the parties had accumulated by their joint efforts certain described farm lands, together with cattle, farm machinery, automobiles and trucks; that she was without funds or means of support. Her prayer was for a divorce and alimony; that she be awarded one-half of the real estate and one-half of the personal property; that the three lots in town be set aside to her as her sole property.

Subsequent to the filing of these pleadings the parties entered into a written contract as to the division of property. In this they agreed that defendant should have as her own in fee simple the three lots and in addition plaintiff would pay her $1,000 at the rate of $100 a year; defendant agreed to release any claim she might have on the described farm lands and the personal property; and released plaintiff from any obligation to support her.

The journal entry in the divorce action was under date of March 13, 1952. It recited that defendant was in default; that the parties had entered into an agreement concerning the real and personal property which was fair and should be confirmed; and defendant had been guilty of abandonment for more than one year; and plaintiff was entitled to the relief prayed for. The final judgment granted the plaintiff a divorce and approved the contract.

On September 3, 1953, defendant filed a petition to vacate and modify that judgment. She alleged it was procured by the fraud of plaintiff in that long prior to the commencement of the action plaintiff was the record owner of the three lots in Oakley and a described tract of farm lands and personal property, all of the value of $45,000; that defendant filed her answer and cross petition in the divorce case and plaintiff being fully aware of the merit of her defenses and aware of his record ownership of the property and that the three lots had been bought with her money and the other property had been acquired by the joint efforts of the parties and to prevent her making any defense, falsely represented to her that she had theretofore conveyed an undivided one-half interest in all the farm lands to her son, H. A. Cunningham, by quit-claim deeds; that her son was then the owner of such interest and she

by reason of the conveyance had no interest therein; that all of such property was heavily encumbered and that her defenses in the action would avail her nothing and plaintiff would provide for her a fair and equal share in all the property accumulated by the parties while husband and wife; that he would have an agreement prepared and if she would allow him to get a divorce, she would receive her full share and be relieved of all further trouble and expense in connection with the divorce case; that he did have an agreement drawn up and presented to her by her son and she believed the agreement constituted a fair and equal division and in reliance thereof signed it and withdrew her answer and cross petition; that the representations of plaintiff with respect to property rights of the parties were false and known by plaintiff to be so and were made for the purpose of defrauding defendant of her fair and equitable share of the property acquired by the parties in their thirty-eight years of married life; that the record title to all the real estate, unknown to defendant, was in the name of the plaintiff and defendant by her deed to her son had conveyed nothing and the real property was encumbered to the extent of only a small fraction of its real value; that she received nothing under the agreement except her own property and plaintiff's promise to pay $1,000, none of which had been paid, and at the time plaintiff was the owner of real and personal property of the value of $45,000 and he obtained his divorce and approval of the agreement only by false and perjured testimony and defendant did not discover the fraud until February 25, 1953, when plaintiff commenced his action to reform the agreement between the parties. She further alleged that the stipulation was grossly unfair; that the defendant had no business education or experience and had been in poor health and unable to provide a livelihood for herself, all of which was known to plaintiff; that the stipulation purporting to adjust the property rights between the plaintiff and the defendant and the judgment of the court entered on the 13th day of March, 1952, approving it should be set aside and an equitable division of the property between plaintiff and defendant should be made. The petition then stated that the defendant had a meritorious defense to the action. It set out the date of the marriage and the birth of the children; that she had performed all the duties devolving upon her as the wife of plaintiff but that plaintiff had been guilty of extreme cruelty, gross neglect of duty and abandonment for more than a year toward defendant

and had failed and refused to support her; that all of the real and personal property described had been accumulated by the joint efforts of the parties except the lots in Oakley, which were acquired by individual funds of defendant; that she was then, and at the time the decree of divorce was entered, in poor and ailing health and unable to work or provide her own livelihood and that plaintiff was a strong, able-bodied man, capable of earning a good and sufficient livelihood for himself and this defendant; that by the terms of G. S. 1949, 60-1511, she was entitled as a matter of right to all the property in Oakley and to such share of plaintiff's real and personal property as to the court might appear just and reasonable. She prayed that the judgment rendered on March 13, 1952, be vacated; that she be awarded the full title to the lots in Oakley and such share of all the other real and personal property as to the court might appear just and reasonable, together with reasonable attorney fees and costs.

As an answer to this petition to vacate, the plaintiff first denied generally each and every allegation. He then admitted the marriage and the entering into the contract and that he was the owner of the real estate in question. He denied that his personal property exceeded the value of $8,000 and denied that the real property had been acquired by the joint efforts of the parties and that he had been guilty of any misrepresentation. He denied that the judgment had been obtained by fraud and alleged that the property in question was accumulated through his undivided efforts. He alleged that prior to the judgment of March 13, 1952, the property settlement was submitted to her attorney and that she had independent advice concerning the execution of it and executed it and it was presented to the court with knowledge of the defendant. He alleged the property settlement was just, fair and equitable and stated that the farm lands in question were erroneously described but should be as described in paragraph 2(a) of defendant's petition to vacate and modify the judgment entered herein.

At the conclusion of defendant's case the plaintiff demurred to the evidence. This demurrer was sustained as to the judgment granting the divorce and was overruled as to the property division. The court found that the divorce granted should not be set aside but that the petition to vacate and modify the judgment was in due form; that defendant had a valid defense to the judgment insofar as it divided and awarded property of the parties and it should be

vacated and defendant allowed to defend. The court further found that the allegations of the petition were true and that extrinsic fraud had been practiced by the plaintiff on account of which defendant was prevented from appearing to defend the action on March 13, 1952; that the property settlement so procured was grossly unfair to the defendant and that the judgment should be that plaintiff should be awarded the property he received by virtue of the property settlement and decree of the court entered on March 13, 1952, subject, however, to a judgment and lien in favor of the defendant against the real property awarded to plaintiff in the sum of $11,000 which should be a lien upon the property in question. The court also entered an order *nunc pro tunc* to reform the description of the property and further ordered that defendant should be awarded the three lots in Oakley. Judgment was entered pursuant to these findings.

The plaintiff filed a motion to vacate this judgment and also a motion for a new trial on the ground of abuse of discretion by the court; misconduct of prevailing party; accident and surprise; that plaintiff was not afforded a reasonable opportunity to present his evidence and be heard on the merits of the case; erroneous rulings of the court; that the decision of the court was given under influence and passion and prejudice; that the decision was contrary to the evidence; that there was newly discovered evidence material to the plaintiff which plaintiff could not with reasonable diligence have discovered and produced at the trial; and for corruption of the party obtaining it. These motions were overruled and the plaintiff appealed from the order of March 17, 1954, overruling his demurrers to the evidence; from the judgment rendered and made on May 26, 1954, wherein the judgment entered on March 13, 1952, was set aside and vacated, granting defendant a judgment of $11,000 and making it a lien on real estate; from the order made on September 2, 1954, denying motion to vacate a portion of the judgment entered on May 26, 1954; and from the order made on September 2, 1954, which overruled plaintiff's motion for a new trial.

The specifications of error are that the trial court erred in admitting testimony pertaining to the merits of the main controversy prior to the determination of the extrinsic fraud; that the trial court erred in that it failed to first try and decide upon the grounds to vacate the judgment rendered on March 13, 1952, before trying or deciding upon the validity of the defense to the action; the trial

court erred in that it heard evidence pertaining to the extrinsic fraud after the ruling that defendant did have a valid defense to the action; that the court erred in ruling that the defendant was entitled to judgment and lien upon property which defendant did not own at the time of awarding defendant a money judgment which was in effect an alimony judgment; that the trial court erred in overruling in part plaintiff's demurrer to the evidence; that the court erred in overruling the motion of the plaintiff for an order striking from the judgment rendered on May 26, 1954, that part of the judgment purporting to effect a division of property between plaintiff and defendant, and establishing a lien on property owned and awarded the plaintiff in favor of defendant; that the court erred in overruling plaintiff's motion for a new trial; that the court did not find that a valid defense existed on the part of the defendant to the cause of action alleged by plaintiff; misconduct on the part of the prevailing party; and that the decision was contrary to the evidence.

Plaintiff argues first, the trial court erred in hearing evidence on the merits prior to the determination of the question of the existence of extrinsic fraud. This argument is based upon a construction of the pertinent statutes, G. S. 1949, 60-3007 to 60-3016, inclusive. These are the sections which confer power on district courts to vacate or modify their own judgments after the term at which such judgment or order was made.

G. S. 1949, 60-3007 provides in part:

"The district court shall have power to vacate or modify its own judgment or orders, at or after the term at which such judgment or order was made . . . Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order."

G. S. 1949, 60-3011 provides in part:

"The proceedings to vacate or modify the judgment or order on the grounds mentioned in subdivisions four . . . of section 596 [60-3007] shall be by petition . . . setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant."

G. S. 1949, 60-3012 provides:

"The court shall first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action."

The plaintiff bases his argument on the fact, the trial court heard all the defendant's evidence before finding that the plaintiff

had practiced extrinsic fraud. Actually this argument is directed at the order of proof. The order of proof is a matter of discretion of the trial court. (See *McBride v. Steinweden,* 72 Kan. 508, 83 Pac. 822; also *Rains v. Weiler,* 101 Kan. 294, 166 Pac. 235.) There is good reason for such a rule in a case such as this. The evidence tending to show extrinsic fraud and that to show that defendant had a defense was so intermingled that it would have been next to impossible for the trial court to keep it separated in the trial. This point is not good.

Plaintiff next argues that the trial court erred in overruling his demurrer to defendant's evidence. In his argument on this question plaintiff argues first that the defendant's petition to vacate was not good because it did not set forth the judgment sought to be vacated. A good answer to this is that plaintiff did not demur to this petition or otherwise call the trial court's attention to the deficiency. On the other hand, he in his answer admitted the existence of the judgment and its terms. This argument is not good. (See *Superior Oil Co. v. Blunk,* 161 Kan. 710, 171 P. 2d 658.)

Plaintiff next argues, the trial court erred in refusing to strike from the judgment in this action that part of it which effected a division of property between plaintiff and defendant and established a lien on property owned and awarded him in favor of defendant. The basis of this argument is that the trial court considered evidence of the property interests of the parties as of the time of the hearing of the motion to vacate rather than the time when the action was filed. As a matter of fact the trial court heard substantial evidence as to the property interests of the parties as of the date when the divorce decree was granted.

Plaintiff next argues the trial court erred in its judgment because it was contrary to the evidence. He argues the trial court could not allow alimony because the divorce was granted the husband on account of misconduct of the wife. He argues that a division of property judgment can only be made as to property jointly acquired. He states there is no evidence justifying a finding that the property was accumulated jointly. This argument is not good.

G. S. 1949, 60-1511 authorizes the trial court to make the sort of division made here if the facts warrant it. As to the question whether the property was jointly acquired, the parties were married in 1914 and lived together until the action was filed. Not all of one

section of the real estate was acquired until 1945 and some of it in 1946. The parties had no real property and only a small amount of personal property during the early years of their married life. During the early years of their married life they lived on a farm and defendant kept house, cared for the children, raised poultry and garden and milked the cows. After they moved to town she worked three years in a cafe, made $19 a week, paid rent on the apartment where they lived, and supported herself and plaintiff. Even if she never had worked outside the home her work on the farm and keeping house in town was enough. (See *Forrey v. Forrey,* 167 Kan. 77, 204 P. 2d 725.)

Plaintiff also argues under this heading there was no substantial evidence to warrant the trial court in making the finding that the plaintiff secured the original judgment by extrinsic fraud. This argument is not good. The fraud practiced was of such a nature, and calculated to prevent defendant from appearing in court and contesting the original action, even though she had proper pleadings on file. Such is extrinsic fraud. (See *Stafford v. Stafford,* 163 Kan. 162, 181 P. 2d 491.) There was ample evidence to establish the commission of it.

The judgment of the trial court is affirmed.